KLIEBERT, Judge.
The plaintiff-appellee, Einar J. Ferro, Jr., filed suit against Edward Green and New Orleans Public Service, Inc. claiming damages arising out of an automobile accident *826 which occurred on August 4, 1970 at the intersection of Burgundy Street and Esplanade Avenue in the City of New Orleans. Burgundy Street, at the point it intersects Esplanade Avenue is a one way street with two lanes of traffic proceeding towards Esplanade. On August 4,1970, the plaintiff’s, Einar J. Ferro, Jr.’s, vehicle was stopped in the extreme right lane of Burgundy Street facing Esplanade Avenue. The defendant’s, New Orleans Public Service’s, bus operator was driving a NOPSI bus in the extreme left land of Burgundy Street. As the bus attempted to execute a right hand turn across plaintiff’s lane of traffic and onto Esplanade Avenue, the bus collided into the left side of plaintiff’s vehicle, causing the plaintiff’s vehicle to be raised from the ground and the plaintiff to be thrown about in his automobile.
After trial on the merits, judgment was rendered in plaintiff’s favor. The judgment was for a total of $42,462.14, computed by the trial judge as $15,000.00 for pain and suffering, $26,854.00 for past lost wages, $341.00 for past doctor bills and $264.13 for property damage to the automobile.
NOPSI appealed, contending plaintiff failed to prove the necessary causation between the accident of August 4, 1970 and plaintiff’s injuries. Plaintiff answered the appeal, claiming inadequate damages were awarded. Liability is not an issue on appeal. Hence, we direct our attention to the question of quantum.
According to the testimony given at the trial, since the accident plaintiff was examined by four physicians, two of whom treated him over a long period of time.
Dr. Alvin Johnson, a general practitioner, treated him from August 5, 1970 (the day after the accident) to October 26, 1970 (the date plaintiff was discharged). He diagnosed plaintiff’s injuries as a moderate cervical sprain, with traumatic myositis of the posterior and postero-lateral neck muscles, the upper trapezii and the left sternomas-toid, and a moderately severe lumbosacral jointsprain with involvement of the lower lumbar paravertebral musculature. Treatment consisted of analgesics, muscle relaxants, and proteolytic enzymes. Dr. Johnson discharged plaintiff on October 26, 1970, stating that no objective findings were evident as of that date, even though plaintiff had subjective feelings of pain.
On August 17, 1971 and March 1, 1972, Ferro was examined by Dr. Ray Haddad, an orthopedic surgeon. Dr. Haddad found no objective findings of injury in either examination. In light of Ferro’s history, Dr. Haddad felt the pain Ferro was experiencing was the result of a muscular injury. He found no signs of a disc problem and no evidence of nerve root irritation. Accordingly, Dr. Haddad prescribed flexion exercises to ease Ferro’s discomfort.
Dr. Stuart Phillips, an orthopedic surgeon, examined plaintiff for the first time on September 6, 1974. Plaintiff remained under Dr. Phillips’ treatment from then through the date of trial. He diagnosed plaintiff’s injury as a weakened disc, or an incomplete rupture. After subsequent examinations, he put the plaintiff in a support corset and prescribed isometric exercises, and Dilaudid for pain. On trial, Dr. Phillips testified he diagnosed plaintiff’s injury as a ruptured disc and based on plaintiff’s history felt it was reasonable to conclude the injury was caused by the accident of August 4,1970. Dr. Phillips assigned a disability of between ten and twenty per cent to the lumbar spine and ten per cent disability to the body as a whole.
The fourth doctor to examine the plaintiff was Dr. Richard Levy, a neurologist. At the defendant’s request, he examined Ferro in September, 1976. Dr. Levy could find no neurological involvement in either the cervical region or the lumbar region. Dr. Levy did find objective symptoms of mild mechanical low back pain, but he stated that those were ligamentous or muscular in origin. Since they were not the result of an injury or disease of the spinal cord or nerve roots, Dr. Levy referred Ferro back to his treating orthopedist.
Appellant contends there is no conclusive or strongly suggestive evidence of disc involvement. Further, Counsel argues plain *827 tiff has failed to meet the burden of proving the injuries were caused by the accident of August, 1970. Additionally, appellant argues that several incidents subsequent to the accident, such as, weight lifting or throwing an anchor from a boat, could have caused the disc injury.
Plaintiff, Einar John Ferro, Jr., testified that prior to the accident of August 4,1970, he never had back problems; but, since the accident, the pain has never left his back. Ferro also disavowed any intervening accident or injury to his back and no proof was adduced at trial to support any such intervening cause for his injuries.
The Court was impressed with the logic of the treating orthopedist, Dr. Phillips, and hence quotes from Tr. pp. 225 and 226 as follows:
“_First off from an orthopedic standpoint, it obviously didn’t matter what caused the ruptured disc, whether weight lifting, the accident, a fall, the treatment is all the same so from an orthopedic standpoint it doesn’t make any difference, the treatment is the same there is no medical necessity to make a distinction. From a legal standpoint obviously there is quite a bit of necessity to make a distinction and the only way that I know of to make a distinction is by history, in other words, what the patient tells you about, when they hurt themselves and how they hurt themselves and from the history if the patient had back pain after an accident and never had a symptom free episode, by that I mean a six or twelve week period when he was pain free and functioning normally and the pain is intermittently every time that he stretched his back the pain continued to return, then you would just say by conviction that it was the accident that caused the first symptoms that caused the disc. On the other hand, say if the patient got well for a year and then was out lifting weights and had a reoccur-rence of pain then you would say that the second accident, the lifting of the weights was the cause of the patient’s present problems and that the first one was merely something that weakened it so it would be more likely to rupture. Now, all that I have for causation therefore is Mr. Ferro’s complaints and if the history is that his pain occurred in the back soon after the accident and has continued on a regular basis up until the present time that he never had a symptom free episode then my diagnosis would be that the automobile accident of 1970 caused it and if that’s not the history then my diagnosis would be that it did not cause it but merely weakened the disc.”
It is significant to note that none of the other three doctors who examined Ferro was willing to state that the accident of 1970 was not the cause of Ferro’s injuries. All three doctors stated, in essence, that it was possible, if not probable, for the accident to have caused Ferro’s injuries.
In addition, Dr. Phillips stated that the reports of Doctors Johnson and Haddad support his disc disease diagnosis because the symptoms that they report are symptoms of such a disease. Even though Dr. Haddad, a fellow orthopedist, found no objective findings of disc problems in his examinations of Ferro in 1971 and 1972, Dr. Phillips explained that such a finding was possible and doesn’t preclude having a weakened disc, since it was quite possible that Dr. Haddad saw plaintiff on a day when plaintiff had no objective findings.
The medical testimony in evidence, together with the testimony of Ferro, his wife, and a co-worker to the effect that there were no intervening causes, accidents or trauma, illustrate that plaintiff has proven by a preponderance of the evidence that his injuries are causally related to the accident of August 4, 1970.
Proof by a preponderance of the evidence simply means that, taking the evidence as a whole, such proof shows that the fact or cause sought to be proved is more probable than not. Marcotte v. Travelers Insurance Company, 258 La. 989, 249 So.2d 105 (1971).
It is axiomatic that the plaintiff has the burden of proving the causal connection *828 between damages claimed and the accident by a reasonable preponderance of the evidence. Comeaux v. Barksdale, 342 So.2d 1181 (La.App. 1st Cir. 1977).
The trial court, viewing the evidence as a whole, concluded it was more probable than not that plaintiffs injuries were caused by the accident with the defendant. A trial judge’s finding of fact is not to be disturbed in the absence of manifest error. Canter v. Koehring Co., 283 So.2d 716 (La.1973).
We find no manifest error in the finding of causation by the Court below. The record clearly supports the determination of causation.
The standard of review for quantum was enunciated by the Supreme Court in Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), wherein it stated (at 334):
“We do reemphasize, however, that before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award, (citations omitted) Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court.”
The Supreme Court further articulated the process for evaluating quantum in Reck v. Stevens, 373 So.2d 498, 501 (La.1979) wherein it stated that:
“_the initial inquiry must always be directed at whether the trier court’s award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact’s ‘much discretion,’ La.Civ.C. Art. 1934(3), in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive_or insufficient, (emphasis added)
The trial court awarded plaintiff $15,000.00 for pain and suffering. We conclude that given the facts of this case, such an award is neither insufficient nor excessive.
However, the trial court also awarded plaintiff $26,854.00 for lost wages between 1970 and 1978. The proof adduced at trial to support a claim for lost wages was the testimony of John Heausler, official of' New Orleans Clerks and Checkers Union ILA Local 1497. Ferro is a member of this union. Basically, Heausler testified that Ferro was guaranteed 2080 hours a year by the union and that in the time span of 1970-1978, Ferro should have made $108,-680.00, but he only earned $81,826.00, a difference of $26,845.00. There was no explicit testimony adduced as to why Ferro missed the work time. The only testimony which referred to this was Ferro’s statement that he missed “two to four months a year” and about 200 to 300 hours of overtime. Since the requisite connexity between the plaintiff’s injury (which was caused by the accident) and the lost wages has not been satisfactorily proven, then plaintiff has failed to prove these damages by a preponderance of the evidence. See Marcotte v. Travelers, supra, and Comeaux v. Barksdale, supra.
However, the trial court also failed to take cognizance of the fact that plaintiff has incurred a disability of ten to twenty per cent of the lumbar spine and ten per cent of the body as a whole. No damages were awarded by the trial court for this disability, and we feel that it was manifest error to not grant same.
In our view, the award for lost wages is manifestly excessive. The award for permanent disability, being non-existent, is manifestly inadequate. However, within the limits of our permissible review under the guidelines enunciated by the Supreme Court in Coco and Reck, supra, the total amount awarded by the trial court is neither excessive nor inadequate. See, also, Wall v. New Orleans Public Service, Inc., *829 389 So.2d 80 (La.App. 4th Cir. 1980). Accordingly, we affirm.
For the foregoing assigned reasons, the judgment appealed from is affirmed. All costs of appeal to be paid by defendant-appellant, New Orleans Public Service, Inc.
AFFIRMED.