425 So.2d 989 (1983)
Arthur P. RAMOS
v.
Cleo Taylor RAMOS.
No. 5-337.
Court of Appeal of Louisiana, Fifth Circuit.
January 10, 1983.
*990 Grant & Barrow, Ernest E. Barrow, II, Gretna, for plaintiff-appellant.
Jacobs, Loeffelholz & Trestman, Roger Jacobs, Alan B. Tusa, New Orleans, for defendant-appellee.
Before CHEHARDY, CURRAULT and GAUDIN, JJ.
CHEHARDY, Judge.
Arthur P. Ramos appeals from a judgment in favor of his former wife, Cleo Taylor Ramos, which made past-due alimony and child support executory and which ordered him to pay future child support in the amount of $120 per month. We affirm in part and reverse in part, for the following reasons.
Arthur and Cleo Ramos are the parents of a major son, David, who was 23 in December 1981, when this matter was heard by the district court. David is mentally retarded and suffers physical disabilities, including hydrocephaly and spina bifida, which make him a total invalid. He has been a resident of the Belle Chasse State School since October 1980.
In a July 2, 1980 consent judgment, signed by both parties and their attorneys, Arthur Ramos agreed to pay Cleo Ramos the sum of $240 a month for alimony and child support. (At that time, as now, David was over the age of majority.) On November 18, 1981, Cleo Ramos filed a rule to make past-due child support executory, alleging Arthur Ramos had failed to make any payments since December 1980 and was in arrears $2,880.
Mr. Ramos countered by filing a rule to dissolve the judgment of alimony and child support. He alleged that Mrs. Ramos was now gainfully employed and no longer in need of alimony. He also averred that David was a major and had been a ward of the State since October 1980 and that the support payments had been suspended pursuant to agreement between him and Mrs. Ramos. Finally, he suggested that any child support due from the date of the child's entry into Belle Chasse State School "be reserved until the proper recipient comes forward to claim the amounts deemed due."
The rules were consolidated for hearing. At trial, the only evidence was the testimony of Cleo and Arthur Ramos; Arthur Ramos' testimony was cut short by the trial judge, who felt it was repetitive and directed more at the parties' personal disagreements *991 than at the issues before the court. The trial judge thereupon cast Mr. Ramos in judgment for the amount of $2,880 in past-due alimony and child support; in addition, the judge discontinued future alimony payments, but ordered child support continued in the amount of $120 a month. Arthur Ramos has appealed; Cleo Ramos neither appealed nor answered the appeal.
The six assignments of error made by Mr. Ramos on appeal may be condensed to four main issues:
1. Whether Mr. and Mrs. Ramos mutually agreed to terminate the child support payments;
2. Whether the consent judgment may be enforced, when the child was being supported by the State at the time the payments became due;
3. Whether a father may be ordered to pay child support to a mother for a child over the age of majority, when the child is not under tutorship at the time of the rule for support; and
4. Whether the trial judge erred in terminating Mr. Ramos' presentation of his case, by refusing to allow him to testify further.

ENFORCEABILITY OF THE CONSENT JUDGMENT
An award of child support may not be modified, reduced, or terminated unless proper suit is brought, operation of law occurs, or a conventional obligation suspending the award is entered into between the parties. Dubroc v. Dubroc, 388 So.2d 377 (La.1980); Halcomb v. Halcomb, 352 So.2d 1013 (La.1977).
The fact that a child is no longer living with the mother does not alter the rule that a judgment for child support remains in full force and effect in favor of the party to whom it was awarded, until the party liable applies to the court for modification, or unless the judgment is modified by conventional obligation. Bertrand v. Bertrand, 401 So.2d 552 (La.App. 3d Cir.1981); Dubroc v. Dubroc, supra. Thus, the fact that David's care was taken over by the State when he entered Belle Chasse State School did not suspend the enforceability of the consent judgment.
Mr. Ramos did attempt to establish that Mrs. Ramos agreed to termination of the child support payments after David became a resident of the Belle Chasse State School. He testified that in October 1980, shortly after David entered the school, Mrs. Ramos told him she would no longer be needing either alimony or child support, asking only that he make two more payments. He said he made payments on November 1 and 15, and thereafter ceased the payments. Mrs. Ramos soon contacted him and told him she wanted him to start making the payments again, for the next 14 months while she was in nursing school. Mr. Ramos refused, citing their earlier agreement.
Mrs. Ramos, on the other hand, denied she ever agreed that he could stop the payments.
In order for an agreement between parents to modify the amount of child support to be enforceable, the parties must clearly agree to that modification, and the burden of proof is on the party relying on the agreement to relieve him of his obligation. Williams v. Williams, 405 So.2d 1277 (La.App. 4th Cir.1981). Here, not only has Mrs. Ramos denied making such an agreement, but Mr. Ramos admits that even if she did make it, she soon changed her mind. We conclude Mr. Ramos has failed to carry his burden of proving clear agreement between the parties to modify or terminate Mr. Ramos' obligation under the consent judgment.

ENFORCEABILITY OF AWARD OF FUTURE CHILD SUPPORT
The obligations of support owed by parents to their children are established by Articles 224, 227 and 229 of our Civil Code. The obligations imposed on the parents under LSA-C.C. arts. 224 and 227 to support, maintain and educate their children terminate when the minor reaches the age of majority. Suire v. Miller, 363 So.2d 945 (La.App. 3d Cir.1978). However, the *992 obligation imposed by LSA-C.C. art. 229, governing reciprocal alimentary duties of ascendants and descendants, continues past minority, as long as the party seeking it is in need. Id.
Once the child has reached the age of majority, however, the custodial parent no longer has the capacity to raise for the child the question of whether the child is in need of support from the other parent.
"Parental authority, C.C. art. 216, and tutorship, art. 37 (including the natural tutorship which art. 157 provides for the parent awarded custody, and which results in authority over the `minor', arts. 246 and 250), cease upon the child's majority. * * *" King v. Sanchez, 273 So.2d 45, 46 (La.App. 4th Cir.1973).
There is no showing by Mrs. Ramos either that she is David's tutrix under proceedings for permanent tutorship, LSA-C.C. arts. 354 et seq., or that she is his curatrix under proceedings for interdiction, LSA-C.C. arts. 389-426. Failing such capacity on her part, the trial court erred in awarding her child support on behalf of David.

THE TRIAL JUDGE'S TERMINATION OF MR. RAMOS' CASE
Considering our conclusions above, we find it unnecessary to address this last issue. Mr. Ramos has made no showing he could have produced any additional evidence that would have changed our conclusion as to the enforceability of the consent judgment and the amount made executory.

DECREE
For the foregoing reasons, the judgment of the district court is reversed insofar as it awarded continuing child support in the amount of $120 per month. Pursuant to LSA-C.C.P. art. 3943, however, that award of continuing child support is not suspended by this appeal. Accordingly, the $120-per-month award will accrue up to the date this judgment becomes final on appeal. Frederic v. Frederic, 302 So.2d 903 (La.1974).
In all other respects, the judgment below is affirmed. Costs are assessed against Mr. Ramos.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.