649 So.2d 711 (1994)
Voris SEBASTIEN, et al., Plaintiffs-Appellees/Appellants,
v.
Douglas W. McKAY, M.D., et al., Defendants-Appellants/Appellees.
No. 94-203.
Court of Appeal of Louisiana, Third Circuit.
November 23, 1994.
*712 Leslie J. Schiff, Anne Elizabeth Watson, Opelousas, for Voris Sebastien, et al.
Gary McGoffin, LaFayette, for Douglas W. McKay M.D. et al.
Before DOUCET, COOKS, SAUNDERS, WOODARD and DECUIR, JJ.
SAUNDERS, Judge.
This appeal arises from a medical malpractice action.
On October 3, 1989, Dr. Douglas McKay, an orthopedic surgeon, performed back surgery on Voris Sebastien, a seventy-four year old man, to relieve leg and back pain. After surgery, a surgical drain was left in place temporarily to drain excess blood and fluid. Such drains are generally removed six to seventy-two hours after surgery. The day after surgery, Dr. McKay attempted to remove the drain from Mr. Sebastien's back. After several attempts, the drain broke with part coming out and part remaining in Mr. Sebastien's back. Dr. McKay decided to leave the remainder in Mr. Sebastien's back.
For approximately two months, Mr. Sebastien appeared to recover normally. Then he began having pains and running fever. Various tests were run in an unsuccessful attempt to locate the source of the infection.
Finally, in April 1990, while Mr. Sebastien was hospitalized at our Lady of Lourdes *713 Hospital in Lafayette, Louisiana, for rehabilitation, radiological studies were done which revealed the presence of the drain fragment. Upon being informed that the drain was in Mr. Sebastien's back, his family agreed to allow it to be removed. After its removal, Mr. Sebastien's condition improved. According to the discharge summary from Lourdes, he regained his ambulatory status, was able to walk with a cane, and was discharged to his daughter's home on April 20, 1990. He received physical therapy until May 12, 1990, when he was discharged. At that time, he continued to have problems with tightness in the hamstring muscle on the left side.
Mr. Sebastien and his two adult children pursued this malpractice action against Dr. McKay and others. The matter was presented to a medical review panel which found only Dr. McKay to have violated the applicable standard of care. Its language follows:
THE EVIDENCE SUPPORTS THE CONCLUSION THAT THE DEFENDANT, DR. DOUGLAS W. MCKAY, FAILED TO COMPLY WITH THE APPROPRIATE STANDARD OF CARE AS CHARGED IN THE COMPLAINT IN THAT HE FAILED TO REMOVE THE SURGICAL DRAIN FROM THE PLAINTIFF'S BACK. THE CONDUCT WAS A FACTOR IN THE RESULTANT DAMAGES. THE PLAINTIFF DID NOT SUFFER ANY PERMANENT IMPAIRMENT OR DISABILITY AS A RESULT OF THE CONDUCT. THE PLAINTIFF DID SUSTAIN TEMPORARY CONSEQUENCES CONSISTING OF PAIN UNTIL THE TIME THAT THE DRAIN WAS REMOVED AND EPISODES OF INFECTION WHICH REQUIRED SUBSEQUENT HOSPITALIZATIONS AND WAS REQUIRED TO UNDERGO TWO SURGICAL PROCEDURES.
Mr. Sebastien filed suit against Dr. McKay. His children, Delores Sebastien Sylvester and Joseph Sebastien, joined in the suit asking for damages for loss of consortium.
Prior to trial, Dr. McKay and the plaintiffs entered the following stipulation:
"Douglas McKay, M.D. has received the opinion of the medical review panel which has reviewed the claims of Voris Sebastien, Delores Sebastien, [sic] Sylvester and Joseph Robley Sebastien, claim number 90-1018, accepts the opinion of the medical review panel and agrees to compensate the plaintiffs for all damages awarded in a final judgment in this proceeding.
This Stipulation reserves to both the plaintiffs and the defendant the right to seek judicial review of any judgment entered at the district court level with regard to quantum only."
At the beginning of trial, the trial judge ruled that the defense would not be allowed to introduce evidence concerning the responsibility of the manufacturer of the surgical drain for Voris Sebastien's injuries. The defense made an "offer of proof" to the effect that, if allowed, Drs. Nason, McKay and Aswell would testify that surgical drains are routinely used in these procedures, the removal of the surgical drain contemplates pulling them from the patient's body, that none of those three physicians has experienced a surgical drain breaking upon removal from the patient's body, nor did they expect that it would, and that, in their opinion, in the absence of a defect in the drain or of an event during the procedure, such as nicking it or suturing it, the drain should be able to be removed without breaking.
The matter was tried before a jury. After hearing the evidence and arguments of counsel, the jury returned a verdict in favor of Voris Sebastien and against Dr. Douglas McKay, and awarded damages in the amount of $20,000.00. However, the jury made no award to Delores Sebastien Sylvester or Joseph Sebastien. Judgment was rendered in conformity to the jury verdict. Motions for additur and/or new trial were denied. All parties appealed the jury's verdict. After the appeal, Voris Sebastien died of causes unrelated to this action. His children were substituted for him in this action.

DEFECT EVIDENCE
Dr. McKay asserts on appeal that he should have been allowed to introduce evidence with regard to a defect in the drainage *714 tube because the allegations that a defect in the tube caused it to break off in Mr. Sebastien's back constituted an affirmative defense to the malpractice claim.
"An affirmative defense raises new matter which, assuming the allegations in the petition to be true, constitutes a defense to the action and will have the effect of defeating plaintiff's demand on its merits."
Webster v. Rushing, 316 So.2d 111, 114 (La. 1975).
We cannot say that allegations of a defect in the drain raise new matter which would defeat the plaintiffs' claim. Plaintiffs claim, and defendant has stipulated, that he failed to comply with appropriate standard of care in that he failed to remove the drain from the plaintiff's back. Regardless of whether the drain was defective, Dr. McKay failed to remove it and by this failure, breached the standard of care. The existence of a defect would not relieve the doctor of the need to remove the drain in order to meet the standard of care.
Accordingly, the evidence of a possible defect in the surgical drain is not relevant to this matter as defined by LSA-C.E. art. 401 and was therefore properly excluded.

LOSS OF CONSORTIUM
The plaintiffs argue that the jury erred in failing to award damages for loss of consortium to Delores Sebastien Sylvester and Joseph Sebastien.
With the exception of its sexual component, a child may be awarded for loss of consortium to the same extent as a spouse provided the requisite showing is made. Higley v. Kramer, 581 So.2d 273, 282 (La. App. 1st Cir.), writ denied, 583 So.2d 483 (La.1991). These items may include loss of love and affection, society and companionship, material services, support, aid and assistance, comfort, and felicity. Id., (and cites therein); Horton v. McCrary, 620 So.2d 918, 934 (La.App. 3d Cir.1993), reversed in part on other grounds, 635 So.2d 199 (La. 1994).
Claims for loss of consortium are usually made by minor children; however, unlike other provisions of the Civil Code,[1] LSA-C.C. arts. 2315, 2315.1 and 2315.2 offer relief without regard to the majority or minority of the parties so aggrieved. Moreover, precedent exists for the award of loss of consortium to adult children. Horton, supra, (college freshman); Barnett v. Trinity Universal Insurance Co., 286 So.2d 770, 778 (La. App. 2d Cir.) (on rehearing), writ refused, 287 So.2d 528 (La.1973) (ages 18-26); Soileau v. Continental Insurance Co., 228 So.2d 522, 526 (La.App. 3d Cir.1969), writ refused, 255 La. 280, 230 So.2d 587 (La.1970) (ages not specified, but father sixty-six at death and married forty-nine years). Moreover, such damages have been available to the aggrieved children and spouses of surviving loved ones since LSA-C.C. art. 2315 was amended in 1982. Bernard v. State, through DOTD, 563 So.2d 282, 285 (La.App. 4th Cir. 1990)[2]; Finley v. Bass, 478 So.2d 608, 614 (La.App. 2d Cir.1985); Ferguson v. Burkett, 454 So.2d 413, 415-17 (La.App. 3d Cir.1984).
Both adult children, Delores and Joseph, claim to have been aggrieved by their father's need for constant care and for their emotional losses due to his temporarily but significantly weakened condition. Additionally, Joseph Sebastien, himself in poor health, alleged a loss of material services in that he and his father shared a home and his father's weakened state precluded his ability to care for his major son, entitling son Joseph to damages.
As to the children's initial claims for emotional losses, we agree that the jury clearly erred in failing to award any damages at all. For their emotional losses and vigilant watch over their father's recovery for several months, we believe that the lowest reasonable award under the circumstances is *715 $5,000.00 for daughter, Delores Sebastien Sylvester, and $2,500.00 for son, Joseph Sebastien. While both children saw to it that their father kept his medical appointments, it was Delores whose dogged persistence led to the discovery of the malpractice and who steadfastly kept track of her father's appointments throughout his recovery. These awards are further supported by the testimony of psychologist, Dr. Glenn Anthony Alley, who observed that it is always the family that pays the price emotionally for the rapid deterioration in health of a loved one. While it is true that the father's health had been gradually declining for several years, the evidence clearly suggests a correlation between the medical malpractice, leaving a drain in the back of a 79 year old, and the elderly gentlemen's hastened decline.
Next, we turn to the adult son Joseph's allegations that he is entitled to reimbursement for his father's inability to continue to care for him (Joseph) following the malpractice.
We conclude that, given the right circumstances, the laws of this state do afford a needy child compensation for loss of a parent's services without regard to the age of the child, provided the parent would have been able to provide those obligations absent the tortious conduct of a third party.
Ordinarily, the parent's duty to provide largely disappears when the child attains majority, unless the child is still in school, less than nineteen years old, and dependant. LSA-C.C. art. 230. Relatives in the direct ascending line remain responsible, however, for life's basic necessities for needy descendants beyond that time, provided circumstances permit. LSA-C.C. art. 229 and comments following LSA-C.C. arts. 231-234; Ramos v. Ramos, 425 So.2d 989, 991-92 (La.App. 5th Cir.1983). These obligations are described generally in Suire v. Miller, 363 So.2d 945, 948-49 (La.App. 3d Cir.1978).
Nonetheless, we cannot say that the jury's refusal to award the adult child damages for this component was manifestly erroneous: by son Joseph's own admission, he had recovered from a stroke and was self-sufficient by the time his father had the back operation.

VORIS SEBASTIEN'S QUANTUM OF DAMAGES
Finally, the plaintiffs argue that the jury's award of damages to Voris Sebastien was inadequate.
"In reviewing the other elements of damages awarded, we are guided by the following:
`The standard of review for quantum was enunciated by the Supreme Court in Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), wherein it stated (at 334):
`We do reemphasize, however, that before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award. (citations omitted) Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court.'
The Supreme Court further articulated the process for evaluating quantum in Reck v. Stevens, 373 So.2d 498, 501 (La. 1979) wherein it stated that:
`... the initial inquiry must always be directed at whether the trier court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's `much discretion,' La.Civ.C. Art. 1934(3), in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive ... or insufficient. (emphasis added).'

Ferro v. Green, 394 So.2d 824, 828 (La. App. 4th Cir.1981)."
Pitre v. Government Employees Ins. Co., 596 So.2d 256, 260 (La.App. 3d Cir.), writ denied, 600 So.2d 685 (La.1992). See also, Youn v. *716 Maritime Overseas Corp., 623 So.2d 1257 (La.1993).
The evidence supports the conclusion that the failure to remove the drain caused an increase in pain suffered by Mr. Sebastien during his recovery from back surgery. He also experienced episodes of infection which caused him to be hospitalized. These problems occurred over a period of five months and ended when the remainder of the drain was removed. Mr. Sebastien recovered rapidly after the drain's removal. Additionally, although Mr. Sebastien recovered rapidly after the removal of the drain, there was testimony which indicates that the recovery from back surgery can take from six months to a year and a half in persons much younger and healthier than Mr. Sebastien.
On the other hand, Mr. Sebastien was in a bad general state of health prior to the surgery. He had heart and lung disease and a multiplicity of related problems. Additionally, it appeared that he might need further surgery on the cervical spine for problems unrelated to the back surgery involved in this case.
This evidence, combined with Mr. Sebastien's recovery, lead us to conclude that the damage award of $20,000.00 to Mr. Sebastien was not an abuse of discretion.

DECREE
The judgment of the trial court is affirmed, except its denial of damages to Delores and Joseph, the children of Voris Sebastien, which is reversed. Delores Sebastien Sylvester is awarded $5,000.00 and Joseph Sebastien is awarded $2,500.00 for loss of consortium, both with interest from date of judicial demand. In all other respects, the judgment of the trial court is affirmed. Costs taxed to defendant.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
DOUCET, J., dissents and assigns written reasons.
DOUCET, Judge, dissenting.
I respectfully dissent from the majority's decision to award loss of consortium to the two middle-aged children of Voris Sebastien. It is frequently tempting to decide cases as we would have done were we the trier of fact. However, it is the duty of this court to apply the manifest error rule, which has been so amply stated in the jurisprudence of this state.
It appears that the majority, in its references to "emotional losses," is attempting to compensate the Sebastien children for mental anguish. However, a "cause of action for loss of consortium does not include a claim for mental anguish suffered as a result of the physical injury to the other person. Sharp v. Metropolitan Property & Liability Ins. Co., 478 So.2d 724 (La.App. 3d Cir.1985)." Simpson v. State Through Dept. of Transp. and Development, 636 So.2d 608 (La.App. 1 Cir.1993), writ denied, 94-0042 (La. 5/6/94); 637 So.2d 471.
In a parent-child context, an award for loss of consortium is properly made where there has been some measurable or compensable loss, such as loss of love and affection, society and companionship, right of performance of material services, right of support, aid and assistance, and felicity. Armstrong v. Fireman's Fund Ins. Co., 558 So.2d 646 (La.App. 1 Cir.), writ denied 560 So.2d 30 (La.1990), Deville v. Budd Const. Co., 617 So.2d 570 (La.App. 3 Cir.), writ denied 625 So.2d 180 (La.1993).
Here neither child introduced so much as a scintilla of evidence that would tend to show a loss in any of these areas. The evidence does not show any deterioration in the relationship between father and children. If anything, it would appear that they now spend more time with him than previously. The record shows no difference in the love and affection existing between the parent and children before and after the injury. Nor does the record show any loss of material service to the children. In fact it appears that Mr. Sebastien had reached the age where his children were providing services to him rather than the reverse. The statement by the majority that they kept "vigilant watch" over their father for several months is unsupported by evidence. Neither Delores' testimony nor that of any other witness supports the statement that it was her *717 "dogged persistence" which led to the discovery that the drain had been left in. These statements appear to result from the efforts by the majority to "read between the lines" of the record in order to infer facts not proven. If true, these actions by the children are commendable. However, they do not show a loss of the sort that supports an award for loss of consortium. In order for an adult child to receive an award for loss of consortium as a result of providing services to a parent, the child must show that he or she provided services in excess of the moral obligation to care for and aged parent. Such an award might be appropriate where a child shows that he or she provided extraordinary care to a parent, over and above the care that would normally be expected for the care of an aged parent by an adult child. Care requiring the child to change his or her lifestyle, by giving up vacations or taking time off from work, for example, would be indicative of such a situation. Bernard v. State Through Dept. of Transp. and Development, 563 So.2d 282 (La.App. 4 Cir.1990), overruled on other grounds by Socorro v. City of New Orleans, 579 So.2d 931 (La. 1991). See also Pino v. Gauthier, 633 So.2d 638 (La.App. 1 Cir.1993), writ denied, 94-0260 (La. 3/18/94); 634 So.2d 859. There is no evidence of record in this case to show that the Sebastien children had such extraordinary demands made on them.
"It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Canter v. Koehring, 283 So.2d 716, 724 (La.1973). See also, Sevier v. United States Fidelity & Guaranty Co., 497 So.2d 1380, 1383 (La.1986); West v. Bayou Vista Manor, Inc., 371 So.2d 1146, 1150 (La.1979); Davis v. Owen, 368 So.2d 1052, 1056 (La.1979); Cadiere v. West Gibson Products Co., 364 So.2d 998, 999 (La. 1978); A. Tate, "Manifest Error" Further observations on appellate review of facts in Louisiana civil cases, 22 La.L.Rev. 605, 611 (1962). The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Arceneaux, supra at 1333, Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985). In applying the manifestly erroneousclearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo. See, F. Maraist, The Work of the Louisiana Appellate Courts for the 1978-1979 TermA Faculty Symposium, Civil Procedure, 40 La.L.Rev. 761, 764 (1980); Comment, Appellate Review of Facts in Louisiana Civil Cases, 21 La.L.Rev. 402, 412 (1961); Cf. Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969)."
Rosell v. ESCO, 549 So.2d 840, 844 (La.1989)
Review of a fact finder's decision must be based on the record as a whole. While it is inappropriate to affirm based on "only so much of the record as will reveal a reasonable factual basis for the finding in the trial court," it is equally inappropriate to reverse based on only those parts of the record which support reversal. Further, I do not believe it is appropriate to extrapolate or "read between the lines" of the record in an attempt to deduce facts not actually in evidence.
An appropriate review of this case under the manifest error standard would result in affirmation of the jury's decision to deny an award for loss of consortium. Accordingly, I *718 would affirm the jury's determination that no award of consortium should be made.
NOTES
[1] See e.g., LSA-C.C. art. 216 (parental authority exists only until child's majority or emancipation).
[2] Overruled in part on grounds wholly irrelevant to this proceeding, Socorro v. City of New Orleans, 579 So.2d 931, 944 (La.1991) (statute imposing cap on suits against state and political subdivision substantive and prospective only, overruling retroactive application of Bernard and other cases of Fourth Circuit).