651 So.2d 911 (1995)
Lucy Wilinda LEDBETTER, et al., Plaintiff-Appellee/Appellant,
v.
CONCORD GENERAL CORPORATION, Defendant-Appellant/Appellee.
No. 26,643-CA.
Court of Appeal of Louisiana, Second Circuit.
March 1, 1995.
Writ Granted May 12, 1995.
*913 Bethard & Davis, L.L.P. by Robert E. Bethard, Couchatta, for plaintiffs-appellants Lucy Wilinda Ledbetter, Jessica Veara and Roger Daniel Grimes, Jr.
Hoffman, Sutterfield, Esenat & Bankston by Michael W. McKay, Baton Rouge, for defendant-appellant Classic Syndicate, Inc., Insurer of the Worth Motel.
Davidson, Nix, Arceneaux, Jones & Askew by James H. Askew, Shreveport, for defendant-appellee Balvantrai Govindji Patel a/k/a Patel and Manjulaven Dahyabhai Patel d/b/a Worth Motel.
Before SEXTON, LINDSAY and WILLIAMS, JJ.
LINDSAY, Judge.
This is a civil suit arising from the rape of a motel patron. The trial court found that the motel's insurance policy provided coverage for the damages suffered by the victim. The trial court also apportioned fault among the parties and made a general damage award of $240,000 to the victim of the rape, reduced by the victim's percentage of fault and by settlement with one of the parties. The trial court denied damage claims for lost business revenue to the victim, a mental anguish claim by the victim's granddaughter and a loss of consortium claim by the victim's son. The defendant insurance company and all the plaintiffs have appealed. For the following reasons, we reverse in part and affirm in part the trial court judgment.

FACTS
The plaintiff, Lucy Wilinda Ledbetter, was employed as a traveling salesperson of nursery plants. Her employment required her to frequently spend the night "on the road." When she was in the Coushatta, Louisiana area, Mrs. Ledbetter stayed at the Worth Motel, owned and operated by B.G. Patel and his wife.
On August 12, 1988, Mrs. Ledbetter checked into the Worth Motel with her six year old granddaughter, Jessica Veara. Mrs. Ledbetter requested and was assigned Room 4, the room she usually occupied. The room did not have a dead bolt lock, but did have a chain on the door. Before retiring for the night, Mrs. Ledbetter checked the chain, but was not certain she checked the door handle to be sure it was locked. While her granddaughter slept in a separate bed, Mark McGraw, another guest at the motel who was employed by Zaval Tex, a pipeline construction company, gained unauthorized entry into the room. While threatening Mrs. Ledbetter with a tire tool, McGraw raped her. He then forced her into her car and the two drove a short distance from the motel, at which point, Mrs. Ledbetter jumped out of the car and escaped.
Local law enforcement officials were summoned and Mrs. Ledbetter was taken back to the motel where her granddaughter was still sleeping. McGraw was apprehended, prosecuted for the offense and was convicted. He was sentenced to serve life in prison. See State v. McGraw, 564 So.2d 727 (La.App. 2d Cir.1990), writ denied 567 So.2d 1126 (La. 1990).
On December 30, 1988, suit was brought against Balvantrai Govindji Patel, his wife, Manjulaven Dahyabhai Patel, d/b/a Worth Motel, Concord General Corporation and Illinois Insurance Exchange, then believed to be the motel's insurers, and the perpetrator of the offense, Mark McGraw. Concord General and Illinois Insurance were later dismissed. Classic Syndicate, Inc., insurer of the Worth Motel, and Zaval Tex, the employer of the perpetrator, were added as defendants.
Plaintiffs in the suit were Mrs. Ledbetter, the victim, as well as her daughter, Jennifer Veara, the natural tutrix of the granddaughter, Jessica Veara, and her son, Roger Daniel Grimes, Jr. Ms. Veara alleged that her daughter, Jessica, was significantly traumatized by seeing her grandmother after the incident. Mr. Grimes alleged that he resided *914 with his mother and had been damaged as a result of the rape because his mother was unable to perform such maternal functions as cooking and cleaning.
The Patels and Classic Syndicate, Inc. filed a third party demand/cross claim against McGraw and his employer, Zaval Tex, arguing that the employer was on notice that McGraw had been in "some trouble," but failed to investigate and learn that he had two previous rape convictions, one in North Carolina and one in Texas.
Zaval Tex filed a third party demand against the Patels, Classic Syndicate, and McGraw. Eventually, the plaintiffs settled their claim against Zaval Tex and that company was dismissed from the proceedings by agreement of all parties.
On September 5, 1989, Classic Syndicate, Inc. filed a motion for summary judgment, asserting that its policy did not provide coverage in this case because of an assault and battery exclusion in the policy. A hearing was held on the motion and on October 23, 1989, the trial court denied the motion, finding that there were genuine issues of material fact as well as issues regarding coverage. The parties appealed that decision to this court.
In Ledbetter v. Concord General Corporation, 564 So.2d 732 (La.App. 2d Cir.1990), this court reversed the trial court, finding that partial summary judgment should be granted. This court found that the policy provided coverage for damages sustained as a result of a wrongful entry. The policy did not provide coverage for damages resulting from the actual assault and battery, that is the rape and kidnapping, which took place after the wrongful entry occurred. However, this court found that, from the record before the court, we could not determine whether any damages actually resulted from the wrongful entry, separate and apart from the assault and battery and found that this was a factual matter to be resolved at trial. Therefore, Classic Syndicate was not entitled to be dismissed entirely from the lawsuit. The case was remanded to the trial court for further proceedings.
On May 1, 1991, Classic Syndicate filed another motion for summary judgment arguing that the insurance policy excludes coverage for the claims made by the plaintiffs. This motion was denied by the trial court on May 20, 1991. Classic Syndicate applied to this court for supervisory writs.
On September 20, 1991, this court granted the writ, reversing the trial court ruling. This court stated that "the evidence submitted by the applicant, Classic Syndicate, Inc., shows there is no genuine issue of fact that the plaintiffs suffered no damage from the wrongful entry to the motel room, other than the assault, battery, rape and kidnapping damages which this court previously ruled were totally excluded from coverage by the Assault and Battery Exclusion endorsement attached to the policy."
On January 17, 1992, the Louisiana Supreme Court vacated the decision by this court, 591 So.2d 704. The Supreme Court held that there were genuine issues of material fact, accordingly, and the case was remanded to the trial court for further proceedings.
Trial on the merits was held in March, 1993. On July 21, 1993, judgment was signed by the trial court. Mr. and Mrs. Patel, d/b/a Worth Motel, were found to be 40% at fault. The court found that the motel was covered for that fault by the insurance policy with Classic Syndicate, Inc. Zaval Tex was found to be 25% at fault and Mrs. Ledbetter was found to be 35% at fault. Mark McGraw was found to be solidarily liable with the defendants for damages caused to Mrs. Ledbetter. The court found that Roger Daniel Grimes, Jr. failed to prove his claim for damages and, after conclusion of the plaintiffs' case, the defendants were granted a judgment of involuntary dismissal as to the claim of Jessica Veara.
General damages to Mrs. Ledbetter were fixed at $240,000. The court awarded her $96,000, calculated by reducing plaintiff's damages by her percentage of fault and by the percentage of fault of Zaval Tex, which claim she had previously settled.
In reasons for judgment, the trial court found that Zaval Tex was partially at fault in *915 failing to investigate McGraw's criminal record before hiring him. The court also assessed Mrs. Ledbetter with 35% fault, finding that she was not certain that the door was locked when she went to sleep. The court noted that the evidence showed that the door could be opened from the outside while locked, but this would cause some noise. Mrs. Ledbetter did not report hearing any such noise on the night of the attack.
The court also found that the chain locking device on the door was installed backwards and was not "capable of acting in its proper capacity as a locking device."
The court further found that the insurance policy provided coverage for Mrs. Ledbetter's damage. The court stated that the violation of Mrs. Ledbetter was the result of the wrongful entry of the motel room. The court found that "entering into a philosophical debate over whether rape or kidnapping is considered to be assault and battery does not aid in this determination." The court also found that the damage claim to Mrs. Ledbetter's plant business was too speculative to allow recovery.
Classic Syndicate, Inc. and the plaintiffs appealed the trial court judgment.

INSURANCE COVERAGE
Classic Syndicate, Inc. argues that the trial court erred in finding that the insurance policy issued by the company to the Worth Motel provided coverage for the damage claims of Mrs. Ledbetter against the motel. Classic contends that the exclusion in the policy for damages arising from assault and battery barred her claim. We find that this argument has merit and accordingly reverse the trial court judgment in this regard.
The policy at issue provides coverage for personal injury resulting from a wrongful or unauthorized entry. However, claims resulting from assault and battery are excluded from coverage.
The assault and battery exclusion in Classic Syndicate's policy provides:
Notwithstanding anything contained herein to the contrary, it is understood and agreed that this policy excludes claims arising out of Assault and Battery, whether caused by or at the instigation of, the insured, his employees, patrons, or any causes whatsoever.
Classic argues that this provision excludes coverage in this case because the only damage to Mrs. Ledbetter arose out of the rape and kidnapping, which is, by definition, an assault and battery. Classic argues that because the plaintiff awoke with the assailant's hand over her mouth, she suffered no damage from the unauthorized entry but that her damage arose solely from the assault and battery.
In evaluating the exclusionary clause of this policy in the prior opinion in this matter, cited above, we stated:
When the language of an insurance policy and its endorsements are clear and unambiguous, a reasonable interpretation consistent with the obvious meaning and intent of the policy must be given. Maggio v. Manchester Insurance Company, 292 So.2d 255 (La.App. 4th Cir.1974); Gonsalves v. Dixon, 487 So.2d 644 (La.App. 4th Cir.1986). Any such provisions in the insurance contract which limit liability must be given effect. Gonsalves v. Dixon, supra.

Classic Syndicate, Inc., relies upon Paul v. Montesino,[ 535 So.2d 6 (La.App. 4th Cir. 1988). writ denied, 536 So.2d 1222 (La. 1989)] for the proposition that the damages resulting from the rape and other related offenses were excluded from coverage by the policy's assault and battery exclusion. In Paul v. Montesino, supra, the plaintiff, the tenant of an apartment, was allegedly raped by the lessor's son. The plaintiff's petition alleged that the lessor's son gained entry into her apartment to perform repair work. After gaining entry, he then attacked the plaintiff. Physical contact and a struggle ensued which resulted in the plaintiff being raped. The lessor's liability insurer filed a motion for summary judgment based upon the assault and battery exclusion in its policy with the lessor. The motion for summary judgment was granted by the trial court, and the plaintiff's suit against the insurer was dismissed. The court of appeal affirmed. *916 In so doing, the Fourth Circuit held:
"A rape necessarily requires the intentional use of force and/or violence upon the person of another. Although all batteries are not rapes, all rapes necessarily are batteries." 535 So.2d at 7.
We find Paul v. Montesino, supra, dispositive as to whether Classic Syndicate's policy provided coverage for the damages sustained by Ms. Ledbetter as a result of the rape. Furthermore, we find that a similar rationale is applicable to the kidnapping allegations. The kidnapping, as alleged in the present case, necessarily involved an assault, or placing the victim in reasonable apprehension of receiving a battery. Accordingly, we conclude that the trial court erred in overruling the motion for summary judgment insofar as any of the plaintiffs' claims for damages relate to the assaults and batteries which occurred during the rape and kidnapping of Ms. Ledbetter.
In our prior opinion in this case, in finding that there was no coverage for damages arising from the assault and battery, this court stated as follows:
The policy does not provide coverage for damages resulting from the actual assault and battery which took place after the wrongful entry occurred. Thus, we find that Classic Syndicate, Inc., is not entitled to be entirely dismissed from this lawsuit because the policy provides some degree of coverage for the wrongful entry. However, from the record before us, we cannot determine whether any damages actually resulted from the unauthorized entry, separate and apart from the assault and battery. This is a factual matter to be resolved at trial.
In our prior opinion, we specifically stated that the Classic Syndicate Insurance policy did not provide coverage for any damages arising from the rape and kidnapping. However, because the matter was before the court on a motion for summary judgment, there were insufficient facts in the record to conclude whether other damages were sustained by the plaintiff arising from the unauthorized entry to the room, separate and apart from the rape and kidnapping. Now, after trial on the merits, the record shows that Mrs. Ledbetter's damages were attributable solely to the rape and kidnapping.
Mrs. Ledbetter was not awakened by the unauthorized entry into the room. She was unaware that the perpetrator had entered the room until she was awakened with the perpetrator's hand over her mouth. Mrs. Ledbetter's damages began to accrue at the same moment the assault and battery upon her commenced. The trial court's finding that the damages to Mrs. Ledbetter were the result of the unauthorized entry to the motel room is not supported by the record. There is no showing that any of the damages suffered by Mrs. Ledbetter resulted solely from the unauthorized entry.
Further, there is no ambiguity in the assault and battery exclusion in this policy. The jurisprudence has upheld the application of exclusions for damages arising from assault and battery where the plaintiffs have alleged that the damages arose from other factors. See Wallace v. Huber, 597 So.2d 1247 (La.App. 3d Cir.1992); Cortinez v. Handford, 490 So.2d 626 (La.App. 2d Cir. 1986); Gaspard v. Jefferson Insurance Company of New York, 488 So.2d 350 (La.App. 3d Cir.1986); Taylor v. Duplechain, 469 So.2d 472 (La.App. 3d Cir.1985), writ denied 474 So.2d 1306 (La.1985).
In the present case, the plaintiff's damages arose from the rape and kidnapping, not the unauthorized entry. Therefore, we are bound by our prior decisions in this case; there is no insurance coverage for the Worth Motel for damages to Mrs. Ledbetter arising from the assault and battery. Accordingly, the trial court decision against Classic Syndicate, Inc., finding insurance coverage on behalf of the Worth Motel, is reversed.

APPORTIONMENT OF FAULT
The plaintiffs also argue that the trial court erred in assessing any percentage of fault to Mrs. Ledbetter and to Zaval Tex. These arguments have no merit and accordingly we affirm the trial judgment regarding apportionment of fault.
*917 The question of comparative fault is a matter of fact subject to the manifest error rule. Estate of Thomas v. State Through the Department of Transportation and Development, supra. In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste without proper thought. Watson v. State Farm Fire and Casualty Insurance Company, 469 So.2d 967 (La.1985).
In the present case, the trial court found that Zaval Tex was 25% at fault in failing to investigate the criminal record of the perpetrator when they were put on notice prior to hiring him that he had "been in some trouble." Investigation would have revealed two prior rape convictions. Dennis Mott, the representative of Zaval Tex, testified by means of deposition that at the time Mark McGraw was hired, the company's hiring practices did not include any inquiry into prior criminal records. Mr. Mott also stated that had the company known that McGraw had only recently been released from prison following a rape conviction, he would not have been hired. Further, the perpetrator was sent on pipeline construction jobs that frequently required him to stay in motels or other housing that would put him in contact with the general public. We do not find that the trial court erred in finding that Zaval Tex was negligent in failing to inquire into McGraw's background prior to hiring him. Under these circumstances, we affirm the trial court judgment finding Zaval Tex to be 25% at fault.
The trial court also found that Mrs. Ledbetter was 35% at fault in this case. The trial court was not satisfied that Mrs. Ledbetter had locked the door prior to retiring for the evening. Mrs. Ledbetter testified emphatically that she did try the lock and it was secured. However, law enforcement personnel who investigated this offense did not find evidence that the door lock had been forcibly entered. If the door handle was not locked, it was a simple matter for an intruder to open the door and then to disengage the improperly installed chain lock and enter the room.
Officer Scotty Hill of the Coushatta Police Department, testified that, in a statement given to police shortly after the incident occurred, Mrs. Ledbetter was unsure as to whether the door handle lock had been engaged before she retired for the evening.
Officer Charles Adams of the Coushatta Police Department also testified that after the incident, Mrs. Ledbetter was questioned as to whether the door handle was locked and she stated that she had been feeling ill that evening, had taken some medication and was unsure as to whether she locked the bottom lock on the door. She further stated that it was possible that her granddaughter could have gotten out of the room and gone to the car to retrieve a coloring book without Mrs. Ledbetter's knowledge.
Even though Curtis K. Thygesen, the plaintiff's expert witness, testified by way of deposition that the door handle could be manipulated and opened without using any tools, the trial court found that such a manipulation would have caused noise that would have awakened Mrs. Ledbetter.
Based upon the evidence in the record before us, we do not find that the trial court was manifestly erroneous or clearly wrong in finding that Mrs. Ledbetter did not engage the door handle lock before going to sleep prior to this offense and accordingly assessing her with 35% fault.

GENERAL DAMAGES
The defendants argue that the general damage award of $240,000 to the victim is excessively high. The plaintiffs argue that the award of $240,000 is excessively low, considering the great emotional and physical trauma suffered by Mrs. Ledbetter. We find the trial court award of general damages to be neither excessively high or low and, accordingly, affirm the award.
*918 A reviewing court must look first to the individual circumstances of the present case, not to prior awards, before a trial court award for damages can be questioned as inadequate or excessive. Higginbotham v. Ouachita Parish Police Jury, 513 So.2d 537 (La.App. 2d Cir.1987). A damage award should not be disturbed by a reviewing court absent a showing of clear abuse of discretion. Resort to comparison of prior awards in similar cases is proper only after an articulated analysis of the facts discloses an abuse of discretion. Reck v. Stevens, 373 So.2d 498 (La.1979); O'Brien v. Remington Arms Company, Inc., 601 So.2d 330, writ denied 604 So.2d 1003 (La.1992); Estate of Thomas v. State, Through the Department of Transportation and Development, 604 So.2d 617 (La.App. 2d Cir.1992), writ denied 608 So.2d 167 (La.1992).
The appropriate procedure for testing whether the trier of fact has abused its discretion by making an excessive award is to determine whether the award can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the fact finder. The converse of this is also true. In determining whether the trier of fact abused its discretion in making an inadequate award, the evidence must be viewed in the light most favorable to the defendant. Higginbotham v. Ouachita Parish Police Jury, supra; Reck v. Stevens, supra; O'Brien v. Remington Arms Company, Inc., supra; Estate of Thomas v. State, Through the Department of Transportation and Development, supra.
Mrs. Ledbetter suffered an extremely traumatic attack upon her person in which she was physically injured and feared for her life and that of her young granddaughter. After the attack upon Mrs. Ledbetter, she suffered not only physical injury but severe emotional damage. Her sleep patterns were interrupted and she lost weight due to lack of appetite. The plaintiff ceased carrying out her normal daily routine including work and carrying out domestic duties. Mental health professionals who treated the plaintiff after this incident stated that she suffered post traumatic stress disorder and clinical depression. There is no doubt that the attack upon the plaintiff caused her physical and emotional harm. However, the record also shows that the plaintiff was uncooperative with the mental health professionals who attempted to treat her. She admitted that she missed appointments and declined to follow courses of treatment suggested to her. Based upon the record before us, we do not find that the trial court abused its discretion in awarding the plaintiff $240,000 in general damages. Accordingly, we affirm that portion of the trial court judgment.

LOST INCOME
The plaintiffs argue that the trial court erred in failing to award damages to Mrs. Ledbetter for loss of income and business revenues. They argue that as a result of the emotional trauma suffered by Mrs. Ledbetter, she was unable to continue in business and should be compensated for her loss. The trial court rejected this claim as too speculative. We find that the trial court did not err in its finding.
In 1987, Mrs. Ledbetter was employed by a nurseryman, making calls on customers and taking orders. She earned approximately $15,000 in 1987. However, in 1988, Mrs. Ledbetter began her own plant business with her son, Roger Grimes. Mrs. Ledbetter testified that in June 1988, she and an employee prepared an inventory list of stock on hand for delivery during the fall season. According to Mrs. Ledbetter, she had approximately $28,000 in stock plants and approximately $10,000 in other inventory. Roger Grimes testified that his duties included making deliveries and traveling routes, taking orders. He stated that sometimes his mother would accompany him and sometimes he would travel alone. He stated that he also assisted in tending and growing the plants in the greenhouse. His mother was responsible for bookkeeping and for contacting potential customers.
This incident occurred in August, 1988. According to the plaintiffs, as a result of the attack on Mrs. Ledbetter, none of the fall deliveries were made and the entire stock listed on the inventory list prepared in June was lost. According to the plaintiffs, these *919 plants were simply thrown away. In examining this record, we fail to see why some, if not all of the fall deliveries could not have been made by Mrs. Ledbetter's son, Roger Grimes. Mr. Grimes testified that he did not make any of the fall deliveries. Based upon the facts in this case, we find, as did the trial court, that the plaintiff's claim for lost business revenue is too speculative. It is not clear how much of the business loss, if any, was truly attributable to the attack upon Mrs. Ledbetter and how much was attributable to unrelated factors. Therefore, we affirm the trial court ruling denying the claim for lost business revenue to Mrs. Ledbetter.

DAMAGES FOR EMOTIONAL DISTRESS
The plaintiffs argue that the trial court erred in dismissing the claim of Mrs. Ledbetter's granddaughter, Jessica Veara. They argue that although the child slept through the assault, she was extremely frightened upon awakening and seeing her grandmother's condition after the assault. They contend that the child suffers nightmares and is undergoing counseling and should be compensated for these damages.
In LeJeune v. Rayne Branch Hospital, 556 So.2d 559 (La.1990), the Louisiana Supreme Court set forth guidelines for awarding damages for mental pain and anguish arising from injury to another person. In that case the court stated:
Mental pain and anguish claims arising out of injury to third persons are allowable, with these modifications and restrictions:
1. A claimant need not be physically injured, nor suffer physical impact in the same accident in order to be awarded mental pain and anguish damages arising out of injury to another. Nor need he be in the zone of danger to which the directly injured party is exposed. He must, however, either view the accident or injury-causing event or come upon the accident scene soon thereafter and before substantial change has occurred in the victim's condition.
2. The direct victim of the traumatic injury must suffer such harm that it can reasonably be expected that one in the plaintiff's position would suffer serious mental anguish from the experience.
3. The emotional distress sustained must be both serious and reasonably foreseeable to allow recovery. Serious emotional distress, of course, goes well beyond simple mental pain and anguish. Compensation for mental pain and anguish over injury to a third person should only be allowed where the emotional injury is both severe and debilitating. For instance, Paugh v. Hanks, 6 Ohio St.3d 72, 451 N.E.2d 759, 765 (1983) held that "serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." A non-exhaustive list of examples of serious emotional distress includes neuroses, psychoses, chronic depression, phobia and shock. Paugh, supra; Molien v. Kaiser Foundation Hospitals, 27 Cal.3d 916, 167 Cal. Rptr. 831, 616 P.2d 813 (1980). [Emphasis supplied.]
4. A fourth restriction concerns the relationship of the claimant and the direct victim. Considering the significant delimiting effect of the first three requirements, a plausible argument can be made for allowing these damages at least to all claimants having a close relationship with the victim. [Footnotes omitted.]
In the present case, the record fails to show that Jessica Veara suffered mental anguish that was severe and debilitating. Accordingly, the trial court properly disallowed the claim. See Murphy v. K.D. Auger Trucking, Inc., 598 So.2d 443 (La.App. 2d Cir.1992), writ denied 600 So.2d 685 (La. 1992).

LOSS OF CONSORTIUM
The plaintiffs also argue that the trial court erred in rejecting the loss of consortium claim of Roger Daniel Grimes, Jr. Mr. Grimes testified that he lived with his mother and after the assault, she no longer did the washing, cooking and cleaning.
LSA-C.C. Art. 2315 provides that every act whatever of man that causes damages to *920 another obliges him by whose fault it happened to repair it. Damages may include loss of consortium, service, society, and shall be recoverable by the same respective categories of persons who would have a cause of action for the wrongful death of the injured person.
Items included in a loss of consortium claim may include loss of love and affection, society and companionship, services, support, aid and assistance, comfort and felicity. Sebastien v. McKay, 94-203 (La.App. 3d Cir. 11/23/94), 649 So.2d 711.
While claims for loss of consortium by children are usually made by minor children, unlike other provisions of the Civil Code, LSA-C.C. Art 2315 offers relief without regard to the majority or minority of the party aggrieved. Further, precedent exists for the award of loss of consortium to adult children. See Sebastien v. McKay, supra, and cases cited therein.
In the present case, as found by the trial court, the record simply does not support an award of loss of consortium for Mr. Grimes. Basically, Mr. Grimes claims damages for the loss of the domestic services of his mother. However, at the time of this occurrence, Mr. Grimes was twenty-nine years old and had served several years in the military. He lived with his mother sporadically. At most, he lived with her only a few months during 1988 when this incident occurred. The record fails to demonstrate that Mr. Grimes was dependent upon his mother economically, emotionally, or for domestic services. Therefore, the trial court correctly denied this claim for loss of consortium.

CONCLUSION
For the reasons stated above, we reverse and set aside the trial court judgment against Classic Syndicate, Inc., as insurer of the Worth Motel. The judgment of the trial court is affirmed in all other respects. Costs in this court and in the court below are assessed to defendants, B.G. and M.D. Patel, d/b/a The Worth Motel.
AFFIRMED IN PART AND REVERSED IN PART.