867 So.2d 13 (2004)
Emma TURNER
v.
Michael LYONS, ABC Insurance Company, and the City of New Orleans.
No. 2003-CA-0186.
Court of Appeal of Louisiana, Fourth Circuit.
January 28, 2004.
Rehearing Denied February 27, 2004.
*15 Fred L. Herman, Law Offices of Fred L. Herman, New Orleans, LA, for Emma Turner, Isaiah Turner, Joyce Turner and Robert Tate.
Harry R. Crimm, New Orleans, LA, for Milton Turner, Ruby Turner and Arthur Turner.
Edward E. Reynolds, Deputy City Attorney, Frank B. Hayne, III, Assistant City Attorney, John Smith, Deputy City Attorney, Albert A. Thibodeaux, Chief Deputy of Litigation, Charles L. Rice, Jr., Former City Attorney, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge CHARLES R. JONES, Judge TERRI F. LOVE, Judge MOON LANDRIEU).
TERRI F. LOVE, Judge.
Defendants appeal the trial court's judgment awarding the substituted plaintiffs $400,000 for the survival action and $150,000 each for their wrongful death claims. It is from this judgment that Michael Lyons and the City of New Orleans appeal. For the following reasons, we affirm the trial court's findings as it pertains to the assessment of liability, but reverse the trial court's finding on quantum.
FACTS AND PROCEDURAL HISTORY
On August 1, 1995, between 9:30 to 10:00 p.m., sixty-year-old Emma Turner ("Mrs.Turner") was crossing from the lake to the river side of Canal Street in the block between North Galvez and North Miro, when she was injured by a New Orleans Police Department ("N.O.P.D.") vehicle, being driven by Officer Michael Lyons. Mrs. Turner was transported to Charity Hospital where she underwent immediate surgery to repair her two broken legs and a broken arm caused by the accident. That same night, while in the process of recovery, she suffered a heart attack. Two months later, on October 1, 1995, Mrs. Turner was re-admitted for eight days at Charity Hospital for heart complications. Less than one month later, on November 3, 1995, she returned to the hospital with acute exacerbation and congestive heart failure and suffered a seizure. On January 19, 1996, Mrs. Turner once again was hospitalized with congestive heart failure, deep vein thrombosis, and a clot in her right atria. Mrs. Turner returned to the hospital on February 21, 1996, again on February 25, 1996, due to symptoms related to congestive heart failure. Her final visit to the hospital was on April 4, 1996, where she was admitted for *16 five days due to heart complications. Mrs. Turner died on May 31, 1996.
On September 25, 1995, Emma Turner filed suit against Michael Lyons, ABC Insurance Company, and the City of New Orleans for injuries she sustained as a result of the accident. Upon her death, Mrs. Turner's six children were substituted in her survival action as plaintiffs and they, in turn, filed a wrongful death action against Officer Michael Lyons, ABC Insurance Company, and the City of New Orleans, alleging that the August 1, 1995 car accident was the cause of their mother's death. At the trial on the merits, defendants contend that sixty year-old Emma Turner propelled herself into the side of the N.O.P.D. vehicle. However, after considering the evidence, the testimony, and arguments of counsel, the trial court found that the injuries suffered by the decedent, Mrs. Turner, were consistent with a frontal impact and that Officer Michael Lyons was 100% at fault in causing the accident. In its reasons for judgment, the trial court also held, "[t]he testimony of Dr. William Lacorte valid and undisputed by the defense. Therefore, the Court finds that the accident of August 1, 1995, led to the death of Emma Turner." The trial court awarded plaintiff's in the survival action $400,000 and $150,000 each for their wrongful death claims. From this judgment, defendants, Michael Lyons, ABC Insurance Company and the City of New Orleans appeal.
LAW AND DISCUSSION
On appeal, Michael Lyons and the City of New Orleans allege four assignments of errors:
(1) The trial court erred by relying upon the testimony of an accident reconstruction expert to impose liability, where that expert's opinions were based on undefined and unproven facts;
(2) The trial court's holding was erroneous in failing to attribute contributory negligence to Emma Turner;
(3) The award of $400,000 for plaintiff's survival action claim was excessively high; and
(4) The award of $150,000 to each adult plaintiff for wrongful death damages was excessively high and constituted an abuse of discretion.
The issues presented in this appeal consist primarily of questions of fact. A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989). The Louisiana Supreme Court announced a two-part test for the reversal of a fact finder's determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of a trial court, and
2) The appellate court must further determine that the record establishes that the finding is clearly wrong or manifestly erroneous.
Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Stobart v. State of Louisiana, Through the DOTD, 617 So.2d 880 (La. 1993).
The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. Id. The Louisiana Supreme Court has emphasized that
the reviewing court must always keep in mind that `if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.
*17 Housley v. Cerise, 579 So.2d 973 (La. 1991), (quoting Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990)).
The rationale for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses, as compared with the appellate court's access only to a cold record, but also upon the proper allocation of trial and appellate functions between the respective courts. Thus, where two views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Watson v. State Farm Cas. Ins. Co., 469 So.2d 967 (La. 1985).
First Assignment of Error
Since the disposition of the first assignment of error may pretermit any consideration of defendant's other assignments of error, we address the appellants' first assignment of error at the outset. In the first assignment of error, defendants assert that plaintiff's expert testimony was based upon inadmissible evidence and accordingly, the trial court's reliance upon the expert testimony was erroneous. Defendants conclude that the trial court's imposition of liability upon Officer Lyons based on this testimony is reversible error.
The appellants, Officer Michael Lyons and the City of New Orleans contend that the testimony of plaintiff's expert, Dr. Frank Griffith, a physicist and plaintiff's accident reconstruction expert, was inadmissible because his opinion was based upon inadmissible evidence. Appellants contend that the inadmissible evidence Dr. Griffith relied upon in forming his opinion was the N.O.P.D. Police Report and the N.O.P.D. Internal Report. Appellants assert that the trial court based its finding of liability against Officer Lyons upon Dr. Griffith's testimony and should therefore be reversed. We find no merit in this argument. Louisiana Code of Evidence Article 703 provides:
[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
In Wiley v. City of New Orleans, XXXX-XXXX (La.App. 4 Cir. 5/16/01), 809 So.2d 151, the testimony of an expert in the field of land surveying and design, construction, maintenance and safety of public roads and streets was challenged by the appellants as being inadmissible because it was based upon an inadmissible (hearsay) police accident report. According to Article 703 of the Louisiana Code of Evidence, this court found the expert's testimony admissible even though it was a based upon inadmissible hearsay per se. In Wiley this court referenced the 1988 official comments (d) to the Louisiana Code of Evidence Article 703 states:
Under this Article the facts or data underlying the expert witness' opinion may properly be: ... (3) under designated circumstances, facts or data not admissible in evidence (because, for example, their source is inadmissible hearsay), if they are of a kind reasonably relied upon by experts in the particular field in arriving at their opinions or inferences... Whether the facts or data may be reasonably relied upon" in this Fashion is a question for the court under Article 104(A).
During direct examination, Dr. Griffith testified:
Q: Right. Okay. Now, Doctor, would you tell the Court what information you reviewed in connection with the matter of Emma Turner?
*18 A: I reviewed the accident report, the deposition of Officer Lyons, a report Sergeant Glasser, which was the internal report, and the deposition of Dr. Liuzza. Those were the documents that I reviewed. In addition to that, I did a sight visit where measurements were made and photographs were taken on the 19th of April, this year.
Dr. Griffith also testified that he based his opinions upon the trial testimony of defendant Officer Lyons, reviewed the specifications of the type of police vehicle Officer Lyons was driving at the time of the accident, and made calculations regarding its stopping time. Additionally, Dr. Griffith reviewed the Motor Vehicle Traffic Regulations, a textbook pertaining to pedestrian accident reconstruction as well as videos with pedestrian accident reconstructions. The evidence indicates that Dr. Griffith based his opinions on various sources including, but not limited to the N.O.P.D. Police Report and Internal Report, such that the admissibility of the two documents are irrelevant to the overall admissibility of his testimony. Moreover, as in Wiley, Dr. Griffith's reliance upon the N.O.P.D. Police Report and Internal Report does not render his testimony inadmissible as they are of the kind of facts and/or data reasonably relied upon by experts in his particular field.
Finally, the trial court conveyed in its reasons for judgment that it evaluated all the witness testimony, arguments of counsel, and all the evidence presented during the trial. The court specifically stated that it relied upon the testimony of plaintiff's medical expert, Dr. William Lacorte, in its deliberations and noted that Dr. Lacorte's testimony had been undisputed by the defense. Included in the trial testimony were that of Officer Lyons, the officers who responded to the scene of the accident, and the officer who performed the internal investigation of the accident. Therefore, it is apparent the trial court evaluated other witness testimony and evidence from which it drew reasonable inferences in assessing liability to Officer Lyons.
After a complete review of the record and the trial court's reasons for ruling, we cannot find that the trial court's ruling assigning liability to Officer Lyons was manifestly erroneous. We find no error in the trial court's ruling that the evidence was inadmissible hearsay per se, but could be used as a basis of expert testimony.
Second Assignment of Error
In the appellant's second assignment of error, the defendants assert the trial court erred in failing to attribute any fault to Mrs. Turner. Allocation of fault is a factual finding, which an appellate court may not disturb unless the finding is demonstrably wrong. Clement v. Frey, 95-1119 (La.1/16/96), 666 So.2d 607. Factual findings cannot be overturned in the absence of manifest error. Stobart v. State of Louisiana, Through the DOTD, 617 So.2d at 882. The issue to be resolved by this court is not whether the trial court was right or wrong, but whether the fact finder's conclusion was a reasonable one. Id. Pursuant to La. R.S. 32:214, "[E]very driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway." Dang v. New Hampshire Ins. Co., XXXX-XXXX (La.App. 4 Cir. 10/10/01), 798 So.2d 1204. A motorist has a duty to maintain a careful lookout and to exercise care to avoid any obstructions. Nick v. King Cab Co., 02-295, p. 6 (La. App. 5 Cir. 9/30/02), 829 So.2d 568, 572. When a motorist sees, should have seen, or anticipates that a pedestrian is going to cross the path of his vehicle, the motorist must exercise reasonable care to protect the pedestrian. Id. at 571. On direct examination Dr. Griffith testified:

*19 Q: Now, Doctor, did you have occasion in the course of your investigation to review the medical opinion of the forensic pathologist, Dr. Liuzza?
A: I did.
Q: And what did you understand the injuries to Mrs. Turner to be?
A: The major injuries were broken legs, both legs broken in a manner, which was from her left to her right. That is, the force would have been applied from her left to her right.
Q: What significance is that to you as a physics in accident reconstruction?
A: Well, it requires considerable force to break the legs, and these are lower leg fractures, and it's not consistent with striking a rear view mirror. It's consistent with striking a bumper.
At the trial on the merits, the appellants had the burden of proving that Mrs. Turner was comparatively negligent for the cause of the accident. Appellants offered no proof to suggest how Mrs. Turner was hit. During Officer Lyon's testimony on cross-examination he testified:
Q: Officer Lyons, is it your testimony that at no time did the front of your vehicle contact Ms. Emma Turner?
A: That's correct.
Q: You did not see her before impact; is that correct?
A: That's correct.
Q: You did not apply your brakes before impact; is that correct?
A: That's correct.
Q: You, in fact, did not stop until after impact; is that correct?
A: That's correct.
Officer Lyons testified that he stopped at a red light on Canal Street and was accelerating from the green light when he struck Mrs. Turner. However, Dr. Griffith demonstrated through diagrams of the scene and Officer Lyons' testimony that Mrs. Turner had either been within, or at most within five (5) feet of the crosswalk area at the time of the accident.[1] It is uncontested that Mrs. Turner had walked all the way from the curb, across a parking lane and two driving lanes before being struck by Officer Lyons. Dr. Griffith demonstrated that the intersection had lights on all corners and that Mrs. Turner would have been visible to him for at least one hundred fifty (150) feet, allowing Officer Lyons sufficient time to take evasive action. Dr. Griffith testified:
Q: So Mrs. Turner would have been visible from a stopping vehicle proceedings on Canal from Galvez at least 150 feet down the block?
A: That's correct.
Furthermore, forensic pathologist, Dr. Liuzza demonstrated that the severity and angle of the break to the tibia and fibula of both Mrs. Turner's legs indicate that she did not walk into the side of the police car, as appellants suggest, but her injuries were consistent with being hit by the front bumper of the vehicle. Defendants did not controvert neither the plaintiffs' evidence nor the testimony of plaintiff's expert, Dr. Griffith's; therefore, it was reasonable for the trial court to conclude that defendants failed to prove any comparative fault on the part of Mrs. Turner. In the absence of specific facts to the contrary, it is appropriate to presume that a decedent pedestrian had not entered a roadway in the face of an oncoming vehicle. Gallineau v. Travelers Indem. Co., 322 So.2d 408 (La. App.1975).
*20 Considering the record before us, we cannot say the trial court's determination that Mrs. Turner was not at fault in the accident was "manifest error." Accordingly, this assignment is without merit.
Third Assignment of Error
In its third assignment of error, appellants assert that the damages awarded to plaintiffs are excessive. Thus, we must determine whether a survival award of $400,000 is an abuse of the trial court's discretion. The trial court has great discretion when assessing damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993). Each case is different, and the adequacy of the award should be determined by the facts or circumstances particular to the case under consideration. Id. Thus, the initial inquiry is whether the award for the particular injuries and their effects, under the particular circumstances, on the particular injured person is a clear abuse of the "much discretion" vested in the judge or jury. Youn, 623 So.2d at 1260; Joseph v. City of New Orleans, XXXX-XXXX (La.App. 4 Cir. 3/5/03), 842 So.2d 420. In reviewing general damages, an appellate court is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Id. The standard for review is nonspecific, and only when the award, in either direction, is beyond that which a reasonable trier of fact could assess for effects of a particular injury to a particular plaintiff under particular circumstances, should an appellate court increase or reduce award. Coco v. Winston Industries, Incorporated, 341 So.2d 332 (La.1977). Upon finding an abuse of discretion, the award can only be raised (lowered) to the highest (lowest) point, which is reasonably within the discretion of the trial court. Emerson v. Empire Fire and Marine Insurance Company, 393 So.2d 691 (La.1981), citing Coco v. Winston Industries, Incorporated, 341 So.2d 332 (La.1977).
Louisiana Civil Code (La.C.C.) article 2315.1(A) provides in pertinent part for survival actions:
If a person who has been injured by an offense or quasi offense dies, the right to recover all damages for injury to that person, his property, or otherwise, caused by the offense or quasi offense, shall survive for a period of one year from the death of the deceased in favor of:
1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.
Generally, survival damages are warranted if plaintiff presents any evidence ("a scintilla") of pain and suffering on the part of the decedent. Giammanchere v. Ernst, 1996-2458 (La.App. 4 Cir. 5/19/99), 742 So.2d 572. Plaintiffs correctly analogize Mrs. Turner to the plaintiff in Giammanchere, asserting that, like Giammanchere, Mrs. Turner's survival damages were appropriately valued at $400,000. Ms. Giammanchere suffered for six weeks with a misdiagnosis and resultant delay in treatment of a hip fracture and experienced severe and documented pain. Furthermore, Ms. Giammanchere experienced multiple system failure after her surgery, including a stroke, and remained in the hospital from the date of her surgery until her death, three and a half months later.
It is undisputed that Mrs. Turner was severely injured when the vehicle struck her. The injuries she suffered caused her to endure great pain and suffering. Her arm and both of her legs were broken, requiring immediate surgery. Dr. Lacorte, plaintiffs' medical expert, testified that the trauma of the accident caused severe blood loss, which put a strain on Mrs. Turner's heart. Dr. Lacorte was of the opinion that the stress of the accident *21 caused Mrs. Turner's heart attack. Mrs. Turner continued to experience congestive heart failure after the accident. Dr. Lacorte attributed Mrs. Turner's poor cardiac function to be a direct consequence of the accident. Mrs. Turner then developed deep vein thrombosis and a clot in her atria as a result of her being sedentary. Mrs. Turner needed a by-pass surgery. This surgery would have required a vein graft to be taken from her leg, but the damage to her legs from the motor vehicle accident precluded her from being a candidate for the surgery. Approximately a month and a half before her death, Mrs. Turner was diagnosed as having "end stage cardiomyopathy." Mrs.Turner died approximately ten months after being hit by the police vehicle.
At trial, Mrs. Turner's son, Milton Turner, testified that Mrs. Turner had been very active and independent before the accident, tending to her own needs as well as those of her family, including her young grandchildren. She was also a very active member of her community. Following the accident, she was in constant pain and discomfort in the months between the accident and her death. Furthermore, Mrs. Turner was no longer able to lead the active lifestyle she had prior to the accident and was able to get around only with the aid of a walker. The injuries Mrs. Turner sustained were ongoing, causing her to return to the hospital multiple times following the accident, sometimes for days on end, and, ultimately caused complications, which led to her death.
Based upon the totality of evidence presented to the trial court on Mrs. Turner's survival damages, we find the trial court's award of $400,000 did not constitute a clear abuse of its discretion.
Fourth Assignment of Error
In the appellants' fourth assignment of error, we do find that the trial court abused its discretion in awarding $150,000 to each of Mrs. Turner's six children for wrongful death damages. La. C.C. article 2315.2(A) provides in pertinent part:
If a person dies due to the fault of another, suit may be brought by the following persons to recover damages, which they sustained as a result of the death:
(1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.
Damages for wrongful death are intended to compensate the victim's beneficiaries for their loss, following the victim's death. Elements of damages for wrongful death include loss of love and affection, loss of services, loss of support, medical expenses and funeral expenses. Watkins v. Bethley, 662 So.2d 839 (La. App. 2nd Cir. 11/1/95); Mathieu v. State, Dept. of Transportation and Development, 598 So.2d 676 (La.App. 2nd Cir.1992); Pierre v. Lallie Kemp Charity Hospital, 515 So.2d 614 (La.App. 1st Cir.1987). In order to establish a claim for loss of consortium, a claimant must factually support the defendant's liability, the damage suffered by the primary victim, and his or her loss of consortium damages. Peck v. Wal-Mart Stores, Inc., 96-645 (La.App. 3 Cir. 11/6/96), 682 So.2d 974. Loss of consortium, in the context of the parent/child relationship, means loss of the aid, assistance and companionship of the child, or loss of affection, society and service. Spears v. Jefferson Parish School Board, 94-0352, p. 7 (La.App. 5 Cir. 11/16/94), 646 So.2d 1104, 1107. A loss of consortium award is a fact-specific determination, to be decided case-by-case and is disturbed only if there is a clear showing of an abuse of discretion. Rudd v. Atlas Processing Refinery, 26,048 (La.App. 2 Cir. 9/21/94), 644 So.2d 402, 411; Johnson v. Wal-Mart *22 Stores, Inc., 616 So.2d 817 (La.App. 2nd Cir.1993). If an abuse of discretion is found, it is incumbent upon this court to determine the greatest or least amount that the fact finder could have reasonably awarded, and either raise or lower the award to that extent. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993).
However, before a trial court award of damages can be questioned as excessive or inadequate, the reviewing court must look first, not to prior awards, but to the individual circumstances of the instant case. Coco v. Winston Industries, Incorporated, 341 So.2d 332 (La.1977). Thus we must examine the facts of this case and, in particular, the circumstances of the relationship of each child with the decedent. Emphasis added. Watkins v. Bethley, 662 So.2d 839 (La.App. 2 Cir. 11/1/95). In Thonn v. Cook, XXXX-XXXX (La.App. 4 Cir. 12/10/03), 863 So.2d 628, the Fourth Circuit, held:
Loss of consortium claims generally have the following seven items: (1) loss of love and affection; (2) loss of society and companionship; (3) impairment of sexual relations; (4) loss of performance or material services; (5) loss of financial support; (6) loss of aid and assistance; and (7) loss of fidelity. Campbell v. Webster Parish Police Jury, 36,391 (La. App. 2 Cir. 09/18/02), 828 So.2d 170.
To be compensable, it is not necessary that a loss of consortium claim include damages from each category. Gunn v. Robertson, 01-347 (La.App. 5 Cir. 11/14/01), 801 So.2d 555, 565; Seagers v. Pailet, 95-52 (La.App. 5 Cir. 5/10/95), 656 So.2d 700. However, the plaintiff has the burden of proving definite loss. Quinn v. Wal-Mart Stores, Inc., 34,280 (La.App. 2 Cir. 12/6/00), 774 So.2d 1093. Although claims for consortium are usually made by minor children, La. C.C. articles 2315, 2315.1 and 2315.2 offer relief without regard to the majority or minority of the parties so aggrieved. Moreover, precedent exists for the award of loss of consortium to adult children. Sebastien, et al. v. McKay, M.D., et al., 94-203 (La.App. 3 Cir. 11/23/94), 649 So.2d 711.
Although plaintiffs factually supported the defendant's liability, and established damage suffered by the primary victim, Mrs. Turner, this court finds that there was insufficient factual support establishing a loss of consortium sufficient to render individual awards of $150,000. "Ordinarily, the parent's duty to provide largely disappears when the child attains majority, unless the child is still in school, less than nineteen years old, and dependent." Id. at 6, 649 So.2d at 715 citing LSA-C.C. art. 230.
[A]n award for loss of consortium is properly made where there has been some measurable or compensable loss, such as loss of love and affection, society and companionship, right of performance of material services, right of support, aid and assistance, and felicity.

Armstrong v. Fireman's Fund Ins. Co., 558 So.2d 646 (La.App. 1 Cir.1990) citing La. C.C. art. 2315; Johnmeyer v. Creel, 499 So.2d 571 (La.App. 2nd Cir.1986).
Mrs. Turner had six (6) children, all majors, at the time of her accident and subsequent death. The record clearly indicates that Mrs. Turner was loved by her children and was cherished as a significant member of the Turner family. In no way is this court attempting to demoralize the fact that Mrs. Turner enriched the lives of her children, grandchildren, and the community.
However, we are a court of records. In assessing whether the trial court abused its discretion in awarding $150,000 to each of Mrs. Turner's adult children, we must review the evidence of record in this case, *23 showing that the children had such extraordinary demands on them as to establish an award for loss of consortium for $150,000. At the trial on the merits, two of Mrs. Turner's children testified, Milton and Isaiah Turner. On direct examination, Milton Turner testified that he visited his mother approximately three to four times a week to eat at his mother's house, because she cooked everyday. He also testified that other members of the family would come by to visit as he did. When questioned about family holidays and gatherings, Milton Turner testified that the family gathered for birthdays and holidays such as Easter, Thanksgiving and for the family reunion, which was usually the last Saturday in May. He gave testimony that his mother's favorite hobby was Bingo and that she attended church every Sunday and cooked meals for the homeless given by her church every Wednesday. Milton Turner also testified that his brother, Robert, along with his three minor children, lived with Mrs. Turner. Although neither Robert Turner nor Mrs. Turner's grandchildren testified as to the level of closeness they shared with Mrs. Turner, Milton Turner testified that his mother would "cook, clean, and tend to her grand kids" on a daily basis.
During direct examination, Milton Turner gave testimony establishing to what extent the family was impacted by the injury and subsequent death of Mrs. Turner. Milton was questioned about the hospital visits to see his mother during her two weeks stay after the accident. He testified that he went back a few times to see his mother in the hospital, but based on bad hospital experiences, he became all "jittery and stuff in hospitals." He also testified that he "did see his siblings, his brothers and sisters up there visiting their mother on a regular basis." Although Milton Turner did not provide elaborate testimony as to the extent of the familial ties the Turner children shared with Mrs. Turner, the testimony does establish that the Turner children had suffered a compensable loss. The defendants did not controvert the testimony of Milton Turner as it pertains to the familial relationship between Mrs. Turner and the Turner children and grandchildren.
The other Turner child to testify was Isaiah Turner, who lived in Philadelphia at the time. Isaiah Turner also mentioned the normal holiday family gatherings and reunions. During direct examination, Isaiah Turner testified that the annual family reunion was held on the last Saturday in May, and that Mrs. Turner's death on May 31, 1996 was the last Saturday in May that year. During direct examination, Isaiah Turner was questioned as to the Turner's familial relationship.
Q: Robert (sic), I know it's been on and off for a few weeks and months and years really, but the next document I want to show you is really a photocopy we made of a plaque. And I want you to tell the Judge what this plaque was.
A: Actually it's a plaque me and my deceased brother, Darryl, made in honor of the family to her, and mostly everyone else, at the time I was in New Orleans with her listed at the time, her grandchildren, and two of her sons in recognition of what she has meant to them and to everyone else.
Isaiah Turner also testified that on his way home from Philadelphia, when he found out that his mother died, he composed a tribute to her, which he read at her wake. Isaiah Turner testified that Mrs. Turner's death had a "tremendous affect on the family, as she was the matriarch for the family, and she was like the centerpiece for the family." On direct examination Isaiah was asked how the death *24 of Mrs. Turner affected the family. Isaiah testified:
It had tremendous affect on the family, as she was the matriarch for the family, and she was like the centerpiece for the family. She was the counselor, the disciplinarian if that called. She was almost the whole family in a sense. We met there for reunions, for gatherings. It was never a question of where you're going to go, it was like, what time are you going to get there, in a sense. When holidays came up her favorite time was Mardi Gras. That's something we still try to hold dear to our having the family around her.
Plaintiff's cite Courteaux v. State, 99-0352 (La.App. 4 Cir. 9/22/99), 745 So.2d 91 as an attempt to demonstrate that the loss of consortium award for major children is not excessive, but supported by case law. In Courteaux v. State, two major children were awarded $200,000 for the loss of their mother in an auto accident. However, unlike the plaintiffs in the instant action, the two daughters in Courteaux had mental limitations, which made them especially dependent, physically and emotionally, upon their mother.
In the other cases plaintiffs relied upon, there was evidence of especially close relationships with their parent(s) and testimony that the parents were great sources of emotionally support. In Thomas v. State Farm Insurance Co., and Tuggle v. State, Through DOTD, 499 So.2d 562 (La.App. 2nd Cir.1986), the court held:
[a]wards of $400,00 to husband and $300,000 to each child for wrongful death of wife and mother were excessive and would be reduced to $150,000 to husband, $100,000 to minor child, and $75,000 to adult child. The court reasoned, that although the Thomases were a close-knit family of which Mrs. Thomas was an integral part, when considered against the mass of general damage awards for the wrongful death of a wife and mother, the trial court's awards were excessive. In wrongful death cases involving a parent, awards to minor children have traditionally been greater than awards for major children. For example, awards to minor children range from $25,000 to $150,000, with most of these awards being at $40,000.00 and $100,000.00; awards to major children range from $20,000.00 to $75,000.00 with no specific concentration. See Thomas v. State Farm Insurance Co. and State through DOTD, 499 So.2d at 566 (La.App. 2nd Cir.1986).
Although the record indicates that the Turner children did, in fact, suffer a measurable and compensable loss, other than general testimony, there is nothing in the record for this court to review that would indicate that the Turner children's loss of consortium claim warrants individual awards of $150,000 each. In Robbins v. State Through the Department of Labor, 728 So.2d 991 (La.App. 2 Cir. 2/24/99), the plaintiff sustained injuries when she fell at the Department of Labor office. At the time of the accident the plaintiff's children, Shane, Juanita, and Brian were ages 14, 12, and 11, respectively. The Second Circuit amended the judgment and awarded the three adult children loss of consortium damages. During the trial on the merits, plaintiffs presented trial testimony along with their depositions. However, there was "neither trial nor deposition testimony from" the daughter Juanita. The court amended the judgment, which denied the loss of consortium claim, and awarded the children $2,000 to Shane, $1,000 to Juanita and $2,500 to Brian. Although there was neither trial testimony nor deposition testimony from Juanita, the court reasoned that Shane testified, in great detail, as to the responsibilities his sister assumed, due *25 to the injury of their mother. The court found that there was testimony as to the specific impact that Mrs. Robbins' injury played in all of the children's lives and the degree to which Mrs. Robbins' injury required the children to adjust their lives.
Because loss of consortium is a personal loss, each child should be given a chance to convey the impact the injury or death had on their respective lives. Through the testimony of the two Turner children who were called to testify, the record establishes the impact that the death of Mrs. Turner had on the Turner family, but more specifically the impact her death had on Milton and Isaiah Turner.
We have conducted a review of loss of consortium awards in similar cases and found that the awards varied according to evidence of record. In Rivet v. State, Through Department of Transportation, 434 So.2d 436 (La.App. 3rd Cir.1983), the court awarded $35,000.00 to each of three major children. In Estate of King v. Aetna Cas. Surety Co., 427 So.2d 902 (La.App. 3rd Cir.1983), the court awarded $150,000.00 to the minor child, $50,000.00 to each of four major children, and $75,000.00 to each of two major children. In LeJeune v. Allstate, Ins. Co., 373 So.2d 212 (La.App. 3rd Cir.1979), the court decreased the award to wife from $50,000.00 to $25,000.00, increased the award to the minor son from $12,500.00 to $30,000.00, and increased the award to each of the three major children from $7,500.00 each to $20,000.00.
In Brodtmann v. Duke, 96-0257 (La. App. 4 Cir. 2/11/98), 708 So.2d 447, the court reasoned that the award $150,000 to each of decedent's three adult children, although high, was not an abuse of discretion. This court reasoned that the trial court found that the Brodtmann family was a very close family. In Brodtmann, this court held:
[T]he trial court was very impressed by the testimony of Mrs. Brodtmann and the Brodtmann siblings regarding the effect of their father's death on the quality of their lives ... [S]uch a tragic and untimely fashion caused great despair in each of the plaintiffs ... Although the Brodtmann children are adults and were not dependent upon their father for financial support, they each testified that he was great source of emotional support to them ... Although some may find the awards to be on the high end of the scale, we cannot say that the awards are out of proportion or constitute an abuse of the trial court's discretion.
Emphasis added. Id. at 460.
The loss of a loved one can never justly be compensated, however, in assessing an appropriate quantum, we are guided by pre-existing case law. The Supreme Court has held:
[I]f the appellate court determines that abuse of discretion with respect to award of damages has been committed, it is then appropriate to resort to review of prior awards to determine appropriate modification of award; in such review, test is whether present award is greatly disproportionate to mass of past awards for truly similar injuries.
Theriot v. Allstate Insurance Company, 625 So.2d 1337 (La.1993).
In the present case, we find that the testimony does not rise to the level that was set forth in Brodtmann. Although the testimony does indicate that the Turner children incurred a measurable and compensable loss, the testimony does not establish a loss of consortium claim supporting awards of $150,000 for each child. The testimony given by Milton and Isaiah was specific as to the impact that their mother's death had on their respective lives; however, their testimony was only general in establishing the impact that *26 Mrs. Turner's death had on the other Turner children who did not testify. We find that an award of $150,000 to each of Mrs. Turner's adult children is excessive and accordingly reduce the award for each Turner child who testified, Milton and Isaiah, to $50,000. Based on the general testimony, as to the impact of Mrs. Turner's injury and subsequent death on the four Turner children who did not testify, we find that an award of $150,000 is excessive and reduce the award to $20,000.
CONCLUSION
For the reasons assigned, we find no merit in the appellant's first assignment of error and we affirm the trial court's ruling that the expert testimony was admissible. We find no merit in the appellant's second assignment of error and affirm the trial court's determination that Mrs. Turner was not at fault in the accident. Further, appellant's third assignment of error is without merit and we find that the trial court's award of $400,000 did not constitute a clear abuse of discretion. However, in addressing appellant's fourth assignment of error, we amend the trial court's judgment awarding each of the plaintiff's $150,000 for their wrongful death claim. We find that the highest amount the trial court could have awarded to Isaiah and Milton Turner, the two major surviving children of Mrs. Turner who testified is $50,000 each. As for the judgment awarding the other four of Mrs. Turner's children damages for their loss of consortium claim, based on the testimony establishing a loss to satisfy an award for loss of consortium, the trial court's judgment is amended as to Arthur, Robert, Joyce and Ruby Turner and reduced to $20,000.
AFFIRMED, AMENDED AND RENDERED.
NOTES
[1] Dr. Griffin testified that as of the day of trial, there was no recognizable painted crosswalk where the accident occurred.