JILL STAUDER AND SHELLY    *      NO. 2022-CA-0593
STAUDER, INDIVIDUALLY
AND ON BEHALF OF THE     *      COURT OF APPEAL
DECEASED, DAVID
STAUDER, JR.               *      FOURTH CIRCUIT

VERSUS                 *      STATE OF LOUISIANA

SHELL OIL COMPANY,       *
AVONDALE SHIPYARDS,
INC., ANCO INSULATIONS,    *
INC., LOU-CON, INC., THE   * * * * * * *
MCCARTY CORPORATION
AND TAYLOR-SEIDENBACH,
INC.

ATKINS, J., CONCURS AND ASSIGNS REASONS.

I concur with the majority but write separately to emphasize certain points in support of the majority opinion's affirmation of the trial court's decision and the distinction between the matter *sub judice* and *Lege v. Union Carbide Corp.*, 2020-0252 (La. App. 4 Cir. 4/1/21), ___ So.3d ___, 2021 WL 1227137.

"Because the discretion vested in the trier of fact is so great, and even vast, an appellate court should rarely disturb an award on review." *Williams v. Placid Oil Co.*, 2016-0839, p. 18 (La. App. 3 Cir. 8/2/17), 224 So.3d 1101, 1113 (quoting *Raymond v. Gov't Emps. Ins. Co.*, 2009-1327, p. 3 (La. App. 3 Cir. 6/2/10), 40 So.3d 1179, 1190-91). In discussing an appellate court's role when reviewing an award of general damages, the Louisiana Supreme Court has explained:

> The role of an appellate court in reviewing a general damages award, one which may not be fixed with pecuniary exactitude, is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. This court has long held true to the following principle:
>
> > [b]efore a Court of Appeal can disturb an award made by a [factfinder,] the record must clearly reveal that the trier of fact abused its discretion in making its award. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point

1

> which is reasonably within the discretion afforded that court.

*Guillory v. Lee*, 2009-0075, pp. 14-15 (La. 6/26/09), 16 So.3d 1104, 1117 (alteration in original) (quoting *Wainwright v. Fontenot*, 2000-0492, p. 6 (La. 10/17/00), 774 So.2d 70, 74). *See also Williams*, 2016-0839, p. 18, 224 So.3d at 1113. That is, an appellate court's preliminary inquiry is whether the trial court abused its discretion. *Youn v. Mar. Overseas Corp.*, 623 So.2d 1257, 1260 (La. 1993) (citing *Gaspard v. LeMaire*, 245 La. 239, 158 So.2d 149 (1963); *Ballard v. Nat'l Indem. Co. of Omaha, Neb.*, 246 La. 963, 169 So.2d 64 (1964); *Lomenick v. Schoeffler*, 250 La. 959, 200 So.2d 127 (1967)). Only if the appellate court determines that the trial court abused its discretion does the appellate court look to prior awards to determine what is appropriate. *Id.*, 623 So.2d at 1260-61 (citing *Coco v. Winston Industries, Inc.*, 341 So.2d 332 (La. 1976); *Bitoun v. Landry*, 302 So.2d 278 (La. 1974); *Spillers v. Montgomery Ward & Co.*, 294 So.2d 803 (La. 1974)). This is because "[e]ach case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration." *Id.*, 623 So.2d at 1260.

With these principles in mind, adopting the facts as set forth in the majority Opinion, and based on the circumstances of this case, I agree with the majority that the trial court did not abuse its great discretion in the amount awarded in wrongful death damages to Shelley and Jill Stauder. As the majority Opinion explains, although Shelley did not testify, Ms. Bordelon's testimony expounded on both Shelley's and Jill's distinct relationships with their father, as well as the impact of his death on each of them. Further, though not physically present in the courtroom during the trial, Jill also testified in these respects via video. Again, the majority Opinion acknowledges that some of the testimony was general in nature but that

2

there was also specific testimony about both Shelley's and Jill's unique relationships with their father and how they had each handled his death.

Additionally, like the majority Opinion, I find *Lege* distinguishable from the matter *sub judice*. In *Lege*, two of the decedent-father's four adult children, Kristina and Rodney, "were present in court during the trial" and available but did not testify. 2020-0252, p. 31, ___ So.3d at ___, 2021 WL 1227137, at *14. The other two adult children, Bridgette and Tyler, testified about their respective relationships with their father and in a "general" manner "that their family was always together" but did not provide specific testimony about the decedent's relationships with Kristina and Rodney. *Id.* As this Court explained therein, "in reviewing damage awards to children in a wrongful death action, the reviewing court must look to 'the circumstances of the relationship of *each* child with the decedent.'" *Id.* at p. 28, ___ So.3d at ___, 2021 WL 1227137, at *13 (quoting *Turner v. Lyons*, 2003-0186, p. 12 (La. App. 4 Cir. 1/28/04), 867 So.2d 13, 22). Because the record contained minimal evidence pertaining to Kristina's and Rodney's specific relationships with their father, this Court concluded that the trial court had abused its discretion in awarding the same amount of damages to all four children and reduced the damage awards to Kristina and Rodney. *Id.* at pp. 31-32, ___ So.3d at ___, 2021 WL 1227137, at *14-15.

In contrast, the record in the present matter provides ample evidence of Mr. Stauder's relationships with Shelley and Jill, as noted above and as discussed in the majority Opinion. Although Shelley did not testify, she was not present and available at the trial unlike the non-testifying siblings in *Lege*; and, as the majority Opinion points out, her absence was due to a "mental disability" as supported by a doctor's report. Moreover, unlike in *Lege*, other trial testimony, namely that of Ms. Bordelon, expounded on Shelley's distinct relationship with Mr. Stauder and the aftermath of his death. Turning to Jill, though she was not physically present in the

3

courtroom for the trial, unlike Kristina and Rodney in *Lege*, Jill nonetheless provided testimony about her specific relationship with her father and the impact of his death via videoconferencing. Thus, while I acknowledge *Lege*, I agree with the majority Opinion that it is distinguishable from the matter *sub judice*; and I agree with the majority Opinion that the trial court did not abuse its great discretion in the amount awarded to Shelley and Jill. Further, finding no abuse of the trial court's great discretion in the amount awarded, I also agree with the majority's decision not to compare the amount of damages awarded herein with other cases. *See Youn*, 623 So.2d at 1260 (holding that "[o]nly after . . . a determination of an abuse of discretion is a resort to prior awards appropriate . . . .")

Finally, I agree with the majority in affirming the trial court's decision to order Union Carbide Corporation ("UCC") to pay judicial interest from the date the original lawsuit was filed instead of the date when UCC was added as a defendant and to pretermit discussion of UCC's second assignment of error.