| JILL STAUDER AND SHELLY | * | NO. 2022-CA-0593 |
|---|---|---|
| STAUDER, INDIVIDUALLY | | |
| AND ON BEHALF OF THE | * | |
| DECEASED, DAVID | | COURT OF APPEAL |
| STAUDER, JR. | * | |
| | | FOURTH CIRCUIT |
| VERSUS | * | |
| | | STATE OF LOUISIANA |
| SHELL OIL COMPANY, | * * * * * * * | |
| AVONDALE SHIPYARDS, | | |
| INC., ANCO INSULATIONS, | | |
| INC., LOU-CON, INC., THE | | |
| MCCARTY CORPORATION | | |
| AND TAYLOR-SEIDENBACH, | | |
| INC. | | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2016-02190, DIVISION "F-14"
Honorable Jennifer M. Medley
* * * * * *
**Judge Rachael D. Johnson**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Dale N. Atkins, Judge
Rachael D. Johnson)

**ON REMAND FROM THE LOUISIANA SUPREME COURT**

Calvin Clifford Fayard, Jr.
D. Blayne Honeycutt
FAYARD & HONEYCUTT
519 Florida Avenue Southwest
Denham Springs, LA 70726

Lewis Owens Unglesby
Lance C. Unglesby
Jamie F. Gontarek
Adrian M. Simm, Jr.
UNGLESBY LAW FIRM
112 Founders Drive
Baton Rouge, LA 70810

Lindsey A. Cheek
THE CHEEK LAW FIRM
650 Poydras Street
Suite 2310

New Orleans, LA 70130

COUNSEL FOR PLAINTIFF/APPELLEE

McGready Lewis Richeson
Ernest George Foundas
Milele N. St. Julien
Francis Xavier deBlanc, III
PUGH ACCARDO HAAS RADECKER & CAREY, LLC
1100 Poydras Street, Suite 3600
New Orleans, LA 70163

Kelly Brechtel Becker
Erin E. Bambrick
Trinity A. Morale
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139-5099

COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**
**June 3, 2024**

This matter is before the Court on remand from the Louisiana Supreme Court. In *Stauder v. Shell Oil Co.,* 23-00619 (La. 1/17/24), 376 So.3d 837, the Louisiana Supreme Court vacated *Stauder v. Shell Oil Co.*, 22-0593 (La. App. 4 Cir. 2/15/23), 382 So.3d 138 (hereinafter "*Stauder I*"), and ordered this Court to reconsider our prior ruling in light of *Pete v. Boland Marine & Mfg. Co., LLC*, 23-00170 (La. 10/20/23), 379 So.3d 636, 640, *reh'g denied*, 23-00170 (La. 12/7/23), 374 So.3d 135. In compliance with the Louisiana Supreme Court's order and for the reasons assigned below, we affirm the April 14, 2022 district court judgment awarding $2,750,000 in wrongful death damages to each of the Appellees—sisters Jill and Shelley Stauder ("the Stauders")— for the death of their father, David Stauder, Jr., due to mesothelioma.

## Relevant Facts and Procedural History

The facts of this matter were recounted in *Stauder I,* wherein Appellant, Union Carbide Corporation ("UCC"), sought review of the district court's April 14, 2022 judgment, which was rendered in conformity with a jury verdict, awarding the Stauders a total of $5,500,000 in wrongful death damages. *Stauder I* included the following summation of the testimony adduced at trial regarding the Stauders' respective damages:

We note that at the beginning of the trial, counsel for the Stauders explained to the jury that Shelley would not be present at trial because she suffers from a "mental disability" and that there was a doctor's report which explained her absence. The jury was instructed to listen to what witnesses said about Shelley's relationship with her father. Both Jill Stauder and Mr. Stauder's girlfriend, Anna Bordelon, testified about the Stauders' relationship with their father. Ms. Bordelon's testimony expounded on Shelley's relationship with her father, while Jill principally testified about her personal relationship with her father.

Ms. Bordelon, who was in a twenty-six year relationship with Mr. Stauder, testified that the Stauders were both extremely close to their father, including prior to Mr. Stauder's illness. Shelley, Ms. Bordelon related, lived in a separate house on the same property with Ms. Bordelon and Mr. Stauder for approximately five to six years. She further testified that Shelley visited her father daily and would have dinner with him. Ms. Bordelon further explained that it was Shelley who took her father to the emergency room the first time he passed out at home because he was unable to breathe.

Ms. Bordelon further attested to the Stauders being extremely upset when their father was diagnosed with mesothelioma. She testified that while she took care of Mr. Stauder, the Stauders also helped take care of him, including caring for him on the weekends. Ms. Bordelon explained that Shelley was currently still grieving her father and that she did not believe Shelley's emotional state would ever be the same following his passing. She further testified that Jill also took her father's death hard. She related that both sisters were "really close to their dad" and were continuing to have "a very hard time."

Jill testified that she is a registered nurse and at the time of her father's illness and passing she was a traveling nurse. She related that before her father became sick, they spent time together daily and their relationship morphed into more of a friendship. They ate Sunday dinner together every weekend and talked all the time, she explained. According to her testimony, she and her father enjoyed playing and watching golf games, as well as watching Saints games together.

She testified that both she and Shelley lived close to their father and spent a lot of time with him. She

related that her father loved his kids. She further explained that she and her father had a stronger bond because of the loss of their brother, who was close to both her and her father.

Jill testified that prior to placing Mr. Stauder in hospice she was taking care of him with the assistance, at times, from Ms. Bordelon and Shelley. She explained that she decided to place him in hospice after he fell and broke some of his ribs. He was in hospice for two weeks before he passed. Jill testified that Shelley was with their father when he passed.

Following Mr. Stauder's death, Jill testified that she later met and married a man from New Zealand, where she eventually relocated. She related being unhappy at her wedding because of the void she felt from her father's absence. She also testified that she daily laments that her two-year old son did not get to meet her father. It was hard to remain in New Orleans after her brother and father's deaths, so she relocated to New Zealand, she explained.

*Stauder I*, 22-0593, pp. 7-9, 382 So.3d at 144-45.

In consideration of the foregoing testimony under the abuse of discretion review, this Court affirmed the aforementioned district court judgment. *Id*., 22-0593, p. 10, 382 So.3d at 145-46. The Louisiana Supreme Court later granted UCC's writ of certiorari, vacating *Stauder I,* and remanded this matter "for reconsideration of the jury's award of wrongful death damages in light of the standards of review enunciated by this Court" in *Pete. Stauder,* 23-00619, p. 1, 376 So.3d at 837. Below, we apply the *Pete* Court's holdings.

## Standard of Review

We previously set forth in *Stauder I* the underlying meaning of wrongful death damages and the pre-*Pete* abuse of discretion standard:

"Damages for wrongful death are intended to compensate the victim's beneficiaries for their loss, following the victim's death." *Turner v. Lyons*, 03-0186, p. 11 (La. App. 4 Cir. 1/28/04), 867 So.2d 13, 21; La.

3

Civ. Code art. 2324.1. "Elements of damages for wrongful death include loss of love and affection, loss of services, loss of support, medical expenses and funeral expenses." *Id*., 03-0186, pp. 11-12, 867 So.2d at 21. The plaintiff has the burden of proving definite loss. *Id*., 03-0186, p. 13, 867 So.2d at 22 (citing *Quinn v. Wal–Mart Stores, Inc*., 34,280 (La.App. 2 Cir. 12/6/00), 774 So.2d 1093).

The determination of the amount of damages is [a] factual determination for the jury and is "entitled to great deference on review." *Norfleet v. Lifeguard Transp. Serv., Inc*., 05-0501, p. 10 (La.App. 4 Cir. 5/17/06), 934 So.2d 846, 855 (quoting La. Civ. Code art. 2324.1). [Internal citations omitted]. The discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. *Youn v. Mar. Overseas Corp*., 623 So.2d 1257, 1261 (La. 1993).

Moreover, "[r]easonable persons frequently disagree about the measure of general damages in a particular case." *Id*. "It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award." *Id*. "Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration." *Id*., 623 So.2d at 1260; see also *Turner,* 03-0186, p. 11, 867 So.2d at 21-22 (citing *Coco v. Winston Industries, Incorporated,* 341 So.2d 332 (La.1977)).

In *Dixon v. Travelers Ins. Co.,* 02-1364, pp. 14-15 (La.App. 4 Cir. 4/2/03), 842 So.2d 478, this Court further explained *Youn*'s holding that it is only after a determination has been made that the trier of fact abused its discretion that it becomes appropriate for the appellate court to review an award of damages in comparison with prior awards . . . .

*Stauder I*, 22-0593, pp. 3-4, 382 So.3d at 142.

The *Pete* Court recently altered the well-settled abuse of discretion standard of review in damage award cases. It determined that "some measure of objectivity"

needed to be "incorporated into the determination of an award's reasonableness, so that there is some standard for comparison" due to the "inherently subjective nature of the abuse of discretion standard." *Pete*, 23-00170, p. 2, 379 So.3d at 639. Thus, the Louisiana Supreme Court held that appellate courts "must consider relevant prior general damage awards as guidance in determining whether a trier of fact's award is an abuse of discretion." *Id.* "[R]eview of prior awards is not the only factor to be considered in evaluating whether a general damage award is an abuse of discretion; it is a starting point. No two cases will be identical." *Id.,* 23-00170, p. 9*,* 379 So.3d at 643.

Deciding whether the trier of fact abused its discretion remains the initial inquiry, but to evaluate the issue, appellate courts are "to include a consideration of prior awards in similar cases, as well as the particular facts and circumstances of the case under review." *Id*., 23-00170, p. 10, 379 So.3d at 644. "'It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.'" *Id.,* 23-00170, p. 9, 379 So. 3d at 643 (quoting *Youn*, 623 So.2d 1257 at 1261).

**Analysis**

Our review of the wrongful death damage awards in similar cases reveals recent awards ranging from $500,000 to $750,000 for adult children for the loss of a parent. In 2023, the First Circuit held that a jury's wrongful death award of $10.5 million in wrongful death damages to seven adult children, amounting to $1.5 million to each child, was excessive and reduced the award to $500,000 to each child. *Glaser v. Hartford Fire Ins. Co.,* 22-0534, pp. 21-22 (La. App. 1 Cir.

5

8/30/23), 375 So.3d 479, 495, *writ denied*, 23-01346 (La. 1/10/24), 376 So.3d 130, and *writ denied*, 23-01314 (La. 1/10/24), 376 So.3d 134, and *writ denied*, 23-01300 (La. 1/10/24), 376 So.3d 136. In *Glaser*, the adult children lost their father, an 89 year-old, following a car accident and two-weeks of hospitalization. *Id.*, 22-0534, pp. 3-5, 375 So.3d at 484-85. The *Glaser* Court reasoned that "[w]hile no one questions the love, affection, and companionship enjoyed by the Glaser family, $1.5 million to each child is unsupportable in light of the fact that these adult children were not members of their father's household or dependent upon him for support." *Id.*, 22-0534, pp. 21-22, 375 So.3d at 495.

Moreover, the Third Circuit upheld an award of $750,000 in wrongful death damages to each of the adult children of a woman who died from mesothelioma, where each child testified at trial as to the impact of their mother's death. *Williams v. Placid Oil Co.*, 16-839, p. 17-21, (La. App. 3 Cir. 8/2/17), 224 So. 3d 1101, 1111-14.

In *Lege v. Union Carbide Corp.*, 20-0252, pp. 29-32 (La. App. 4 Cir. 4/1/21), 365 So.3d 617, 638-640, *as clarified on reh'g*, 20-0252 (La. App. 4 Cir. 5/12/21), 366 So.3d 75, *writ denied*, 21-00792 (La. 10/1/21), 324 So.3d 1054, *and writ denied*, 21-00775 (La. 10/1/21), 324 So.3d 1059, which this Court discussed in *Stauder I*,[1] this Court affirmed a $500,000 wrongful death damage jury awards in a mesothelioma case to two adult children, respectively, who testified at trial, but reduced the award to the remaining non-testifying children to $100,000 each.

---

[1] In *Stauder I,* this Court reasoned that *Lege*'s reduction in the award to non-testifying children was inapplicable to Shelley Stauder, who unlike the non-testifying *Lege* children, was unable to testify at trial due to her mental disability and where detailed testimony was made on her behalf as to the unique bond she lost with her father. *Stauder I*, 22-0593, p. 10, 382 So.3d at 145.

Furthermore, in *Chaisson v. Avondale Indus., Inc.*, 05-1511, p. 40-44 (La. App. 4 Cir. 12/20/06), 947 So.2d 171, 197-99, this Court upheld a wrongful death award of $562,000 each to two adult daughters of a mesothelioma victim, where the Appellant, the sole defendant remaining at trial, was found responsible for 42.58% of the total award.

With these cases in mind, we now turn to the facts of the instant matter. As noted above, the jury heard testimony that the impact of Mr. Stauder's death on his daughters was devastating, as their close-knit family went from three persons to two. The Stauders had already lost a brother, who predeceased their father. Both daughters assisted in caring for their father prior to his death until he could no longer be cared for at home. Jill left the country when she married following her father's death because it was hard for her to remain in the area after his passing. Shelley, who has a mental disability, is described as having a diminished emotional state since Mr. Stauder's death, according to Ms. Bordelon. The testimony elicited at trial reflects that the Stauders are now a disjointed family, with each sister still mourning their father in their own distinct way:

> The jury heard testimony about the relationship Mr. Stauder had with each of his daughters, who were both distraught and adversely impacted by their father's illness and death in distinct ways. Although generalized testimony about the mutual love the Stauders and their father [was] shared, specific testimony was offered regarding the unique relationship each daughter had with their father.
>
> For Shelley, who visited and dined with her father daily for six years, her mental health worsened because of her father's passing. Jill, who visited her father often and bonded with him over activities after her brother's death, experiences guilt because Mr. Stauder missed her wedding and meeting his grandson. The record reflects that both sisters loved their father and spent copious amounts of time with him in good health and in illness.

7

> The testimony establishes that each sister has sustained loss of love and affection from their father, who they each still grieve.

*Stauder I*, pp. 9-10, 382 So.3d at 145.

The jury's award to the Stauders of $2,750,000 each is substantially greater than the range of the aforementioned jurisprudential awards. However, these cases are distinguishable. We do not find that the wrongful death awards under the unique facts presented at trial are beyond what a reasonable trier of fact would award considering the testimony adduced at trial detailing the devastating effects Mr. Stauder's extended and debilitating illness and resulting death has had on both of his daughters. As the *Williams* Court noted, large wrongful death awards have often been upheld on appeal in Louisiana courts "'where the decedent . . . and minor children had extraordinarily close and loving relationships,'" but *adult* children in an "extremely close and loving family" can also be deeply devastated by the loss of a parent. *Williams*, 16-839, p. 21, 224 So.3d at 1114 (quoting *Mathieu v. State, Dept. of Trans. and Dev.*, 598 So.2d 676, 682 (La.App. 3 Cir. 1992)). The jury found that to be the case here. Jury awards are not arbitrarily decided. The district court did not abuse its discretion in rendering its judgment in conformity with the jury's awards.

We disagree with Appellant's position that the application of *Pete*'s holding requires this Court to inextricably anchor current awards to past jurisprudential awards. To find otherwise would usurp the jury's role to determine the amount of damages based on the particularized circumstances presented before that jury. Moreover, such a limited application of *Pete* to past jurisprudential awards does not consider other factors, such as inflation.

## Decree

8

For the foregoing reasons, the April 14, 2022 district court judgment is affirmed.

9

**AFFIRMED**